Junior A. COLE and Ruby F. Cole, Plaintiffs-Appellees,

v.

Betty A. FARNER, Dolores J. Farner, Donald P. Farner, Dorothy Farner, Jacqulyn Farner, James E. Farner, Joseph P. Farner, Jr., Marjorie E. Farner, Sylvester Farner, William H. Farner, Leo M. Younger, and Viola M. Younger, Defendants-Appellants.

Nos. 85CA0968, 85CA1563.

Colorado Court of Appeals, Div. I.

July 23, 1987.

Rehearing Denied Aug. 27, 1987.

Certiorari Granted (Farner) Feb. 8, 1988.

Coleman, Brown & Jouflas, Joseph Coleman, Grand Junction, for plaintiffs-appellees.

Roath & Brega, P.C., Jack W. Berryhill, John Edward Maas, Bruce A. James, Denver, for defendants-appellants.

ENOCH, Chief Judge.

In this action to recover on a promissory note, the trial court entered summary judgment in favor of plaintiffs, Junior and Ruby Cole, the holders of the note, against defendants (Farners), its makers. On appeal by the Farners, the essential issues concern whether any defenses to the note which they raise should have precluded the entry of summary judgment. We affirm.

The Farners, as owners of a ranch in Gunnison County, Colorado, executed the note in question in connection with a loan obtained from the Federal Land Bank and secured by a mortgage on the ranch.

Subsequently, both the note and the ranch went through a number of transfers, including a complex so-called "tax free" exchange in which the Coles came into possession of the ranch. All transfers of the ranch were subject to the mortgage of the Federal Land Bank, but the Coles, in obtaining the ranch, did not assume liability on the note itself.

In a separate transaction, the Coles borrowed money from the Colorado Livestock Production Credit Association (CLPCA). This loan was secured by a new mortgage on the ranch.

Thereafter, intermediate parties defaulted on the debt to the Federal Land Bank, and it initiated this action against those parties and also against the Farners as original obligors of the debt and makers of

the note, and against Coles as owners of the ranch.

The intermediate parties declared bankruptcy. The CLPCA, in an attempt to protect its junior mortgage security interest in the ranch, took a number of steps which ultimately led to its obtaining possession of the note and an assignment of the Federal Land Bank mortgage. CLPCA then released this mortgage and sold the note to the Coles. The Coles were then substituted for the Federal Land Bank as plaintiffs in this action, and proceeded on the note, the mortgage no longer being an issue in the case. The trial court granted their motion for summary judgment against Farners on the note.

Although the facts in this case are somewhat complex, the action is in essence a suit by one in possession of a promissory note against the maker to enforce payment of the note. Thus, the law which governs is the Uniform Commercial Code, especially § 4–3–101, et seq., C.R.S., concerning commercial paper.

■ Section 4–1–201(20), C.R.S. (1986 Cum.Supp.) defines a holder of a negotiable instrument as "a person who is in possession of ... an instrument ... drawn, issued, or indorsed to him or to his order or to bearer or in blank." The promissory note here was made payable to the Federal Land Bank, "or to its order." The note was indorsed by that entity without recourse to the CLPCA, and then by the CLPCA without recourse to the Coles. Thus, Coles qualify as holders of the note.

■ Because the CLPCA and the Coles purchased the note after the Federal Land Bank had brought suit to enforce payment, they were both fully aware that the note was overdue. Therefore, they do not qualify as holders in due course. Section 4–3–302(1)(c), C.R.S. As mere holders, the Coles take the note subject to all valid claims to it on the part of any person, and subject to all defenses of any party to its enforcement. Section 4–3–306, C.R.S.

One such possible defense arises from § 4–3–606, C.R.S., which provides that the holder of an instrument "discharges any party to the instrument to the extent that without such party's consent the holder ... unjustifiably impairs any collateral for the instrument given by or on behalf of the party." However, the parties agree that a provision of the mortgage which gave the mortgagee permission to release all or any part of the premises "without affecting" the priority of the mortgage or the "personal liability of mortgagor" constituted a "consent" under § 4–3–606 such that this section of the UCC is not a viable defense to Coles' suit on the note.

The focus of Farners' defense is therefore on § 4–3–601(2), C.R.S., which states: "Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money."

### I.

■ The Farners raise the equitable defenses of double recovery, election of remedies, and unjust enrichment, which they contend discharge them from liability to the Coles on the note. All of these defenses can be reduced to one contention: that Coles obtained the collateral, the ranch, for a total consideration that reflected a reduction from the purchase price of an amount equal to the Farners' debt to the Federal Land Bank, and that, therefore, notwithstanding the release, Coles' purchase of the note discharged Farners' liability. We disagree.

The parties strongly disagree as to whether the consideration given by Coles to acquire the ranch reflected a reduction of an amount equal to Farners' debt to the Federal Land Bank. Because of the complicated nature of the exchange transaction by which Coles obtained their interest in the ranch, it is unclear whether the consideration paid by Coles reflected such a reduction. However, for the purposes of determining the appropriateness of the summary judgment entered here, we assume that Farners' contention that there was such a reduction is true.

Even if we presume that the Coles *assumed* the obligation represented by the note, the release clause in the mortgage, by its plain terms, allows the mortgagee to

release both the mortgage and any assuming party, without affecting the original mortgagor's liability.

A party is entitled to a summary judgment if there are pleadings, affidavits, depositions, or admissions on file showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972). In the context of a summary judgment proceeding, an issue of material fact is one whose resolution will affect the outcome of the case. *Mt. Emmons Mining Co. v. Crested Butte*, 690 P.2d 231 (Colo. 1984).

Because the release clause in the mortgage allows the mortgagee to release an assuming grantee from liability, it is not a material fact whether Coles obtained their interest in the ranch for a consideration reduced by the amount of the Federal Land Bank debt. Thus, this factual dispute did not preclude the entry of summary judgment by the trial court. *Abrahamsen, supra; Mt. Emmons Mining Co., supra*. Once the mortgage was released by the CLPCA, who became the assignee of the Federal Land Bank by virtue of its purchase of the note, the Coles were in a position equivalent to that of strangers to the transaction. Thus, they could buy the note and enforce it against its maker.

## II.

■ The Farners, however, further contend that the Coles' acquisition of the note was set up through the use of the CLPCA as a "straw man" to avoid the doctrines of merger and "payment in satisfaction." They argue that under § 4–3–601(3), C.R.S., the Coles' purchase of the note constituted "satisfaction" of the note. We disagree.

Section 4–3–601(3), C.R.S., states in relevant part: "The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument ... [r]eacquires the instrument in his own right." But, before acquiring it from the CLPCA, the Coles had not been holders of the note; thus, their purchase of it from the CLPCA was not a "reacquisition," and this section of the UCC is inapplicable.

## III.

As a final challenge to the judgment, the Farners contend that they have an equitable right to redeem the Ranch. Again, we disagree.

■ There are two types of redemption in mortgage law: equitable redemption, and statutory redemption. The former, also called the "equity of redemption," is the mortgagor's right after default to perform his obligation under the mortgage and have title to his property restored free and clear of the mortgage. G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.1 (1979). However, if the original mortgagor has conveyed away his entire interest in the property, he no longer has an equity of redemption. G. Osborne, *supra*, § 7.2. Thus, the Farners' sale of the ranch precludes them from having any equitable redemption rights.

■ Statutory redemption rights arise under § 38–39–102(1), C.R.S. (1982 Repl. Vol. 16A), which allows the owner of the foreclosed property, or any person who might be liable upon a deficiency, within 75 days of the foreclosure sale, to "redeem" the premises sold by paying the purchase price plus interest and other appropriate costs. Inasmuch as there was no foreclosure sale here, there can be no statutory redemption. Thus, Farners have neither an equitable nor a statutory right of redemption.

The Farners' other contentions of error are without merit.

Accordingly, none of the defenses raised by the Farners is applicable to bar enforcement of the note, and the summary judgment entered by the trial court is correct. *See* § 4–3–306, C.R.S.

Judgment affirmed.

VAN CISE and STERNBERG, JJ., concur.