Betty A. **FARNER**, Dolores J. Farner, Donald P. Farner, Dorothy Farner, Jacqulyn Farner, James E. Farner, Joseph P. Farner, Jr., Marjorie E. Farner, Sylvester Farner, William H. Farner, Leo M. Younger, and Viola N. Younger, Petitioners,

v.

**Junior A. COLE and Ruby F. Cole, Respondents.**

No. 87SC347.

Supreme Court of Colorado,
En Banc.

July 24, 1989.

As Modified on Denial of Rehearing Sept. 18, 1989.

Senn, Lewis, Hoth & Leiser, Mark A. Senn and Bruce B. McLarty, Denver, for petitioners.

Coleman, Brown & Jouflas, Joseph Coleman, Grand Junction, for respondents.

KIRSHBAUM, Justice.

The petitioners, Betty Farner, Dolores Farner, Donald Farner, Dorothy Farner, Jacqulyn Farner, James Farner, Joseph Farner, Marjorie Farner, Sylvester Farner, William Farner, Leo Younger and Viola Younger (the Farner group), appeal the judgment of the Court of Appeals 749 P.2d 970 affirming the district court's order granting summary judgment to respondents, Junior A. Cole and Ruby F. Cole (the Coles), in two suits brought by the Coles on a promissory note. The Farner group contends that issues of material fact remain for resolution with regard to certain defenses asserted. We agree, and therefore reverse the judgment of the Court of Appeals.

I

Many of the facts concerning the numerous and complex series of transactions giving rise to this litigation are not disputed. On January 17, 1978, the Farner group borrowed $337,000 from the Federal Land Bank (FLB) and executed a mortgage on a ranch it owned located in Gunnison County, Colorado (the Middle Ranch) to secure the note. The mortgage and note contained provisions authorizing the FLB to release all or portions of the property.[1]

In June of 1980, the Farner group sold the Middle Ranch to Michael Hotz. The consideration for the transaction included a $50,000 down payment by Hotz, the execution by Hotz of a promissory note to the Farner group for $245,000, the execution by Hotz of a deed of trust encumbering the Middle Ranch in favor of the Farner group, and the assumption by Hotz of the Farner group's obligation to repay the FLB note. Fifteen acres of the property were released by the FLB at that time. Although Hotz

---

1. The mortgage instrument states in pertinent part as follows:

    7. Mortgagee may, at any time, without notice, release all or any part of the premises described herein, grant extensions and deferments ... or release from personal liability any one or more parties who are or may become liable for the debt or any part thereof, without affecting the priority of this mortgage or the personal liability of mortgagor or any party liable or who may become liable for the payment of the lien hereof.

agreed to assume responsibility for payment of the note, the Farner group remained liable to the FLB for the debt.

During 1980 and 1981, Hotz lost a large amount of money in ranching operations he conducted on the Middle Ranch and two other Gunnison County ranch properties he owned. In the fall of 1981, a group of real estate brokers (the Guthrie group) suggested to Hotz that he consider an exchange of ranch properties for eighty-seven acres of commercial and investment property located in Mesa County, Colorado, owned by the Coles. The Coles desired to retire from their commercial ventures and to acquire ranch properties. The proposed transaction was complicated by the fact that while the Coles' property was encumbered only to the extent of approximately $25,000, the two Hotz ranches ultimately involved in the transaction were encumbered by mortgages and deeds of trust apparently totaling $978,059.09. The transaction was further complicated by the desire of Hotz and the Coles to effect a tax-free exchange of properties and by the insistance of the Coles that they would not assume responsibility for any of the debts encumbering the Hotz' Gunnison County ranches.

A complex three-way transaction ultimately occurred in December 1981. Hotz transferred two of his ranches, including the Middle Ranch, to the Guthrie group, subject to the encumbrances, and agreed to remain personally obligated to pay the $978,059.09 in debts secured thereby.[2] The Guthrie group then conveyed the two ranches to the Coles and the Coles conveyed the eighty-seven acres of Mesa County land to the Guthrie group. The Guthrie group retained one thirty-five-acre tract, conveyed the remaining fifty-two acres to Hotz, and executed an agreement with Hotz guaranteeing to pay him $978,-059.09 in such installments and at such intervals as the payments on the debts secured by the Gunnison County ranches

became due. The Guthrie group also executed a mortgage on the Mesa County thirty-five-acre tract in favor of the Coles as security for the $978,059.09 debt to Hotz. All the parties assumed that the Guthrie group would pay the $978,059.09 to Hotz from the sale of the thirty-five-acre Mesa County tract and would retain the balance of the profits from the sale as a commission.

The Guthrie group was unable to sell the thirty-five acres and failed to make the payments to Hotz required by the terms of the note. Hotz, in turn, failed to make the payments required by the notes for which he remained responsible, including the FLB note. In September 1983, the FLB filed a complaint against the Coles, the Farner group, the Guthrie group, Hotz and others (No. 83CV134) to recover on the FLB note and to foreclose the Middle Ranch property.

Among the subordinate lienholders named as defendants in the suit was the Colorado Production Credit Association of Denver (CLPCA). At the time the Coles acquired the Middle Ranch, they also purchased livestock and equipment from Hotz. They obtained funds from the CLPCA for that purpose, and executed a deed of trust on the Middle Ranch in favor of the CLPCA as security for that indebtedness.

In the fall of 1983, the Coles filed an action to foreclose their mortgage on the thirty-five-acre Mesa County tract against the Guthrie group. On February 8, 1984, they purchased this property at a foreclosure sale for the sum of $299,849.50.

On April 25, 1984, the Coles and the CLPCA entered into an agreement pursuant to which the Coles agreed to borrow $664,498, the CLPCA agreed to acquire the FLB note and assign it to the Coles, and the FLB mortgage on the Middle Ranch was to be released to prevent the possibility of any foreclosure on the Middle Ranch.[3] The loan was secured by deeds of trust on

---

**2.** The debts at that time included the sum of $331,291.77 due on the FLB note and $217,050 due on the Farner group note.

**3.** The agreement contained the following pertinent language:

In lieu of disbursing directly to the Coles and in order to prevent any possible merger of the Coles' fee ownership interest in the Property and the interest represented by the FLB Note, [CLPCA] shall disburse, on behalf of the Coles, $440,000.00 to purchase and ob-

all properties owned by the Coles. The agreement also provided that the Coles would continue the litigation initiated by the FLB against the Farner group to recover on the FLB note.

The CLPCA subsequently acquired the FLB note, released the mortgage on the Middle Ranch, and endorsed the note over to the Coles. The Coles were substituted for the FLB as plaintiffs in the pending foreclosure action. The Coles then filed an amended complaint containing three claims seeking recovery of the indebtedness then due on the FLB note.[4]

In its answer to the Coles' amended complaint, the Farner group asserted as an affirmative defense that "[the Coles], by their own actions, have lost and forfeited any and all rights to assert their claims for relief against [the Farner group]." The Farner group also filed a counterclaim against the Coles, alleging that the Coles impermissibly impaired and defeated the equitable right of the Farner group to "look to the real property" to satisfy the FLB note. In their reply to the counterclaim the Coles asserted that by executing the note and mortgage authorizing the FLB unilaterally to release the Middle Ranch as security for the debt, the Farner group forfeited any right to argue that the note had been discharged.

The Farner group filed a motion for summary judgment seeking dismissal of the complaint, asserting that by purchasing the FLB note and releasing the mortgage on the Middle Ranch the Coles lost their right to hold the Farner group liable on the note. The Coles filed a motion for summary judgment on their three claims. In their brief in support of their summary judgment motion the Coles stated that when they acquired the Middle Ranch its value "was not reduced on account of the FLB indebtedness."

In its responsive brief, the Farner group asserted it obtained an equitable right to look to the land to satisfy the FLB note at the time Hotz purchased the Middle Ranch from it because the sales price had been reduced to reflect the amount of encumbrances burdening the property. The Farner group also argued that the Coles purchased the property with knowledge of and subject to the equitable right of the Farner group to look to the land to satisfy its indebtedness on the FLB note. Finally, the Farner group asserted that factual issues remained for resolution, including the question of what value the Coles in fact gave to acquire the Middle Ranch in 1981.[5]

After reviewing the depositions, affidavits, verified pleadings and other documentary evidence, the trial court granted in

tain an assignment of the FLB Note. [CLPCA] shall cause the FLB Mortgage to be released as a part of the transaction in which [CLPCA] is assigned the FLB Note and shall assign the FLB Note to the Coles[.]

4. The Coles initiated a second action against the Farner group on May 3, 1985 (No. 85CV73), seeking judgment on the January 1, 1985, installment due on the FLB note. In view of the fact that the Farner group obtained a judgment against Hotz and an order authorizing foreclosure on the Middle Ranch, the Coles also sought a preliminary injunction halting the sale of this property or, alternatively, a set-off of proceeds from the sale against the judgment entered against the Farner group in case No. 83CV134.

On October 15, 1985, the trial court entered summary judgment in favor of the Coles for $93,064.11 on its claim for the subsequent installment due on the FLB note. However, it denied their request for injunctive relief and refused to grant the Coles' request for a set-off of proceeds. A stay of execution was granted pending appeal, and the appeal was consolidat-

ed with the Farner group's appeal of case No. 83CV134.

5. The Coles argue that the Court of Appeals should not have considered the question of the values placed on the properties when the Coles acquired the Middle Ranch because that issue was not presented to the trial court. The theory advanced by the Farner group in support of its summary judgment motion appears to be as follows: (1) that the Farner group acquired an equitable right to look to the property to satisfy its indebtedness on the FLB note when it sold the Middle Ranch to Hotz; (2) that the Coles were aware of that right when they purchased the ranch from Hotz; (3) that the mortgage obtained by the Coles from the Guthrie group on the 35–acre Mesa County tract represented additional value to the Coles; and (4) that by reacquiring the Mesa County tract, purchasing the FLB note and releasing the FLB mortgage the Coles forfeited their right to seek payment on the note from the Farner group. In addition, the Farner group clearly indicated in a brief supporting a motion for new trial that the question of the actual "value" given by the Coles

part the Coles' motion for summary judgment, with some exceptions, and denied the summary judgment motion of the Farner group.[6] Judgment was entered for the Coles and against the Farner group in the amount of $110,673.10, plus interest and costs.

The Farner group appealed the trial court's judgment. The Court of Appeals affirmed, disposing of the argument that the note must be deemed discharged by reason of acts of the Coles on the ground that the release clause in the note precluded the Farner group from asserting any such defense. The Court of Appeals determined that "it is not a material fact whether the Coles retained their interest in the ranch for a consideration reduced by the amount of the Federal Land Bank debt."

## II

■■ Summary judgment may be entered only if the record discloses an absence of any genuine dispute regarding a material fact. C.R.C.P. 56(c); *Abrahamsen v. Mountain States Tel. & Tel. Co.*, 177 Colo. 422, 426, 494 P.2d 1287, 1289 (1972). In the present case the Coles dispute the Farner Group's contention that the Coles, as a result of the three-way transaction in 1981, acquired the Middle Ranch in 1981 for a value that was in fact discounted to reflect the indebtedness remaining on the FLB note. To determine whether this admitted dispute involves a material fact, it is necessary to examine the defenses asserted by the Farner group to the Coles' first claim for relief asserting a right to recover on the FLB note.

One such defense was the argument that the FLB note was discharged pursuant to section 4-3-601(1)(d), 2 C.R.S. (1973). That section provides for discharge as the result of the "[i]mpairment of right of recourse or of collateral." The Court of Appeals properly rejected this argument. Section 4-3-606, 2 C.R.S. (1973), prohibits a party who consents to the impairment of the collateral

from asserting any defense based on section 4-3-601(1)(d). The Farner group's consent to the unilateral assignment of the FLB note and the release of any or all property securing payment thereof precludes reliance on section 4-3-601(1)(d) to claim a discharge of that note.

However, the Farner group also alleged that the FLB note must be deemed discharged as to it insofar as the Coles seek to recover thereon because certain acts by the Coles would render any contrary result inequitable under the doctrines of unjust enrichment and double recovery. Central to the assertion that to permit the Coles to recover against the Farner group would result in the Coles' achieving a double recovery on the FLB note is the factual allegation that the Coles acquired the Middle Ranch from Hotz at a price reduced to reflect the indebtedness of the FLB note.

The Court of Appeals held that such dispute was not material in view of the release clauses contained in the note and mortgage. However, while such a consent in general prohibits the maker from challenging subsequent assignments of the note and release of the security, that fact need not prohibit the maker from asserting such other defenses of discharge that might be available under the circumstances of a particular case.

The parties agree that the Uniform Commercial Code governs their relationships. The Code contains the following pertinent language:

**Discharge of parties.** (1) The extent of the discharge of any party from liability on an instrument is governed by the sections on:

(a) Payment or satisfaction (section 4-3-603); or

(b) Tender of payment (section 4-3-604); or

(c) Cancellation or renunciation (section 4-3-605); or

(d) Impairment of right of recourse or of collateral (section 4-3-606); or

---

to acquire the Middle Ranch was before the trial court.

**6.** The complaint contained three claims for relief. The trial court in effect granted the Farner group's summary judgment motion with respect

to the remaining two claims. The Coles did not appeal that portion of the trial court's judgment. The record does not disclose what, if any, action has been taken with respect to the Farner group's counterclaim.

(e) Reacquisition of the instrument by a prior party (section 4–3–208); or

(f) Fraudulent and material alteration (section 4–3–407); or

(g) Certification of a check (section 4–3–411); or

(h) Acceptance varying a draft (section 4–3–412); or

(i) Unexcused delay in presentment or notice of dishonor or protest (section 4–3–502).

(2) Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money.

Section 4–3–601(1) and (2), 2 C.R.S. (1973). As previously indicated, the Farner group may not rely upon section 4–3–601(1)(d) to claim a discharge. It does not assert any other defense based on section 4–3–601(1).

Section 4–3–601(2), however, provides that commercial obligations may be discharged by acts other than those enumerated in section 4–3–601(1). Official Comment 2 to section 4–3–601 indicates that subsection (2) is designed to incorporate a provision from section 119 of the former Uniform Negotiable Instruments Act, which section provided that a negotiable instrument is discharged by "any other act which will discharge a simple contract for the payment of money." Uniform Negotiable Instruments Act § 119(4), 5 U.L.A. (1967).[7] Thus section 4–3–601(2) specifically provides for the discharge of an indebtedness resulting from an agreement between the maker and the ultimate holder. *See McLachlen Nat'l Bank v. Fields*, 364 A.2d 1191 (D.C.App.1976); *Brunswick Corp. v. Briscoe*, 523 S.W.2d 115 (Mo.App.1975); *DiLeo v. Werb*, 50 A.D.2d 570, 375 N.Y.S.2d 29 (1975).

Section 4–3–601(2) also provides for the discharge of a maker by any act other than those enumerated in section 4–3–601(1) "which would discharge his simple contract for the payment of money." This broad statutory language supports the position of the Farner group that the consent to unilateral assignment of the FLB note did not result in the forfeiture of the right to assert equitable defenses to the effort of the Coles to seek satisfaction of the debt.

This court has recognized that the holder of a promissory note may not obtain double recovery under the instrument when to do so would be inequitable. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo. 1982); *City of Aurora v. Andrew Land Co.*, 176 Colo. 246, 490 P.2d 67 (1971); *Meredith v. Ramsdell*, 152 Colo. 548, 384 P.2d 941 (1963). The Court of Appeals has recognized that the transfer of property at a discount in recognition of an outstanding indebtedness may alter the traditional relationship between a holder and a maker. *See Ruther v. Thomas*, 43 Colo.App. 435, 604 P.2d 703 (1979). If, as the Farner group alleges, the Coles by their conduct in acquiring the Middle Ranch, reacquiring the thirty-five-acre Mesa County tract and purchasing the FLB note have in effect already received payment for the debt evidenced by the FLB note, the Coles cannot recover that sum for a second time against the Farner group.

The Court of Appeals did not disagree with this assertion. It concluded that by consenting to the unilateral release of the property by FLB, the Farner group in effect lost any right to raise such objection to discharge. As we have indicated, we construe section 4–3–601(2), 2 C.R.S. (1973), to permit a maker to assert equitable defenses of discharge against any holder when the facts so warrant.

It is of course not clear from the evidence thus far developed that the Coles

---

**7.** Official Comment 2 to § 4–3–601 states as follows:

So far as the discharge of any one party is concerned a negotiable instrument differs from any other contract only in the special rules arising out of its character to which paragraphs (a) to (i) of subsection (1) are an index, and in the effect of the discharge against a subsequent holder in due course (Section 3–602). Subsection (2) therefore retains from the original Section 119(4) the provision for discharge by "any other act which will discharge a simple contract for the payment of money[,"] and specifically recognizes the possibility of a discharge by agreement.

acquired the Middle Ranch at a discount reflecting the value of the FLB note. It is also far from certain that the acts the Coles subsequently undertook to protect their interests in the thirty-five-acre Mesa County tract and the Middle Ranch constituted anything other than prudent and astute efforts to preserve something of a sweet transaction gone sour.[8] For purposes of summary judgment, however, the question is whether the record discloses disputes of material facts, thus precluding the entry of summary judgment. *Elm Distribs. Inc. v. Tri-Centennial Corp.*, 768 P.2d 215, 218 (Colo.1989). We conclude that such dispute does exist respecting the Farner group's equitable defenses.

### III

For the foregoing reasons, the judgment of the Court of Appeals is reversed and the case is remanded to the Court of Appeals with directions to remand to the trial court for further proceedings.

---

**8.** The trial court observed in its order that the Coles and the Farner group were "victims of defaults by apparently judgment-proof persons, and there are certain equities favoring each party...." Both Hotz and the Guthrie group have filed for bankruptcy.