**Eugene A. BIGELOW and Alyce M. Bigelow, Plaintiffs–Appellees and Cross–Appellants,**

**v.**

**David A. NOTTINGHAM, Philip R. Hazouri, James A. Giasafakis, Richard H. Elliott, and American Property Equities, a Colorado general partnership, Defendants–Appellants,**

**and**

**Frank J. Haberl, Defendant–Appellant and Cross–Appellee,**

**and**

**Dorothy H. Haberl, Defendant–Cross–Appellee.**

Nos. 89CA1462, 89CA1526.

Colorado Court of Appeals, Div. III.

Nov. 21, 1991.

As Modified on Denial of Rehearing Jan. 23, 1992.

Certiorari Granted Aug. 3, 1992.

Arnold & Porter, Thomas C. Seawell, Richard P. Barkley, Denver, for plaintiffs-appellees and cross-appellants.

Solomon L. Leftin, Denver, for defendants-appellants.

Jacobson & Dudgeon, Ethan A. Jacobson and Leeon E. Hayden, Lakewood, for defendant-appellant and cross-appellee.

No appearance for defendant-cross-appellee.

Opinion by Judge ENOCH.*

This case arises out of a real estate transaction in which plaintiffs, Eugene A. and Alyce M. Bigelow, sold property to defendants, Frank and Dorothy Haberl, in exchange for a promissory note which was secured by a deed of trust covering the property in question. Defendant American Properties Equities, whose general partners are defendants Nottingham, Hazouri, Giasafakis, and Elliott, (collectively APE) subsequently purchased the property from a grantee of the Haberls, and this action was commenced following APE's default on the note. From the trial court's resolution of the issues concerning the various parties' obligations, APE, Frank Haberl,

and the plaintiffs have appealed. Both the Bigelows and APE initiated appeals from the judgments entered in the district court action, and on motion of cross-appellant Haberl, those appeals have been consolidated. We affirm in part and modify in part.

The Bigelows sold a piece of property to the Haberls for which the Haberls gave back a promissory note and a second deed of trust (the Bigelow note and deed of trust), which was subject to an existing first deed of trust (the Empire note and deed of trust). The Bigelow deed of trust incorporated a rider which, subject to certain monetary limitations, obligated the Bigelows to subordinate it to any new first deed of trust "[i]n the event the Grantors [of the deed of trust, the Haberls] refinance the premises...."

The Haberls subsequently conveyed the property to their grantee, who gave back to the Haberls a note and third deed of trust (the Haberl note and deed of trust) which allowed the subordination of the second and third deeds to a new first deed of trust.

APE then accepted a warranty deed to the property in exchange for its agreement to assume and pay the notes secured by the Empire, Bigelow, and Haberl deeds of trust. Subsequently, it executed a promissory note for $400,000 in favor of Midland Federal Savings and Loan Association, which was secured by a fourth deed of trust (the Midland note and deed of trust). It succeeded in paying the balance on the Empire note, thereby releasing the first deed of trust on the property and moving the Bigelow deed of trust into first position.

APE subsequently requested the Bigelows to execute a subordination agreement pursuant to the rider in order that the fourth Midland deed of trust would assume position as the first lien on the property. The Bigelows refused to do so unless APE assumed the Bigelow note and deed of trust.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

APE ultimately assumed the Bigelow note by entering into an assumption agreement which increased the interest rate and amount of monthly payments. The Bigelows then executed an agreement in which they subordinated their deed of trust to the Midland deed of trust.

APE subsequently defaulted on the Bigelow note and deed of trust and on the Midland note. Foreclosure on the Midland deed of trust resulted in a deficiency. This action was commenced by the Bigelows to enforce the terms of the Bigelow note against the defendants.

The trial court granted the motion of the Bigelows for summary judgment against APE. However, factual issues existed regarding whether the collateral of the Haberls had been impaired by the Bigelows' subordination and whether the Haberls had consented to such subordination. Therefore, the Bigelows' motion for summary judgment against the Haberls was denied, and trial to the court proceeded on these issues.

The parties stipulated, and the trial court found, that the Haberls' collateral had been impaired by the Bigelows' execution of the subordination agreement. But, it also found that Mr. Haberl consented to the subordination agreement when he failed to object to its pendency to APE. Therefore, the trial court held that Mr. Haberl was not discharged from his obligation on the Bigelow note.

The trial court also concluded that the evidence did not support a finding that Mrs. Haberl consented to the subordination. Accordingly, it held that Mrs. Haberl was released from her obligation on the Bigelow note.

Defendant APE now appeals the summary judgment in favor of plaintiffs, the Bigelows. Defendant Frank Haberl appeals the judgment against him finding him liable for repayment of the Bigelow note. Finally, plaintiffs, the Bigelows, appeal the trial court's order dismissing their complaint against Dorothy Haberl, and they further appeal the trial court's award of attorney fees.

## I.

APE primarily contends that the trial court erroneously entered summary judgment in favor of the Bigelows by construing an unambiguous subordination clause in the rider to the deed as a personal covenant. It argues that the subordination rider is a covenant running with the land that imposes a legal duty upon the Bigelows to subordinate their deed of trust to any other first deed of trust. Therefore, APE contends that, because the Bigelows did not sacrifice anything to their detriment when they subordinated the Bigelow deed of trust in return for APE's assumption of the Bigelow note, the assumption agreement fails for lack of consideration. We disagree.

■ Initially, we note that the trial court reached its determination by interpreting the deed of trust document. Therefore, because we agree that the subordination clause is unambiguous as a matter of law, see *O'Brien v. Village Land Co.*, 794 P.2d 246 (Colo.1990), the deed may be construed upon appeal. *Brown v. McDavid*, 676 P.2d 714 (Colo.App.1983).

## A.

■ Unlike personal covenants, real covenants bind heirs and assigns of the covenanting parties. *Tarrant Appraisal District v. Colonial Country Club*, 767 S.W.2d 230 (Tex.Ct.App.1989). However, to so bind successor parties, a real covenant must satisfy certain criteria, including the requirement that the covenant touch and concern the property. *See Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*, 40 Colo. 467, 92 P. 290 (1907); 5 R. Powell, *Powell on Real Property* § 673[1] (1991 Rev.Ed.).

■ The "touch and concern" requirement is fulfilled when the covenant operates to benefit the physical use of the land. Restatement of Property § 537 (1944). Here, however, the parties' entitlement to physical use of the land was not increased, *see In re Case*, 91 B.R. 102 (Bankr.D.Colo. 1988), nor was improvement made to the

land as a result of subsequent loan proceeds. *See* Restatement of Property § 437 comment f (1944); *Drobnick v. Western Federal Savings & Loan Ass'n,* 479 P.2d 393 (Colo.App.1970) (not selected for official publication). Therefore, any value derived from the subordination agreement is either personal to APE or speculative. *See Rittmaster v. Brisbane,* 19 Colo. 371, 35 P. 736 (1894).

Inasmuch as the covenant does not "touch and concern" the property, the trial court properly determined it to be a personal covenant.

#### B.

We also reject APE's contention that disputed fact issues exist regarding the intent of the parties to the rider.

■ The intention of the parties to an unambiguous deed must be determined from the deed itself. *O'Brien v. Village Land Co., supra.*

■ Here, when the deed of trust is read as a whole, there is no evidence that both parties intended the covenant to run with the land. Rather, if the rider is read as a whole, it is apparent that it is meant to be binding upon and inure solely to the benefit of the original grantors of the deed of trust, the Haberls, and only upon the Haberls' refinancing of the premises. *See Brown v. McDavid, supra.*

Accordingly, the trial court's finding that the subordination rider is an unambiguous personal covenant will not be disturbed upon review. This disposition renders our consideration of APE's remaining contentions, and of the Bigelow's first contention of error, unnecessary.

#### II.

Frank Haberl contends that insufficient evidence supports the trial court's finding that he consented in advance to the Bigelows' subordination of their deed of trust to the Midland deed of trust. He argues that, once his note was assumed by APE, he became a surety. Therefore, as a surety, he maintains that he was discharged from liability on the Bigelow note because his collateral was impaired when the material terms of that note were modified. We disagree.

■ Consent to impairment of collateral may be given in advance, § 4-3-606, C.R.S. (Official Comment 2), and one who has consented to impairment of collateral is prohibited from relying upon the defense of discharge. Section 4-3-606(1)(b), C.R.S.; *see* § 4-3-601(1)(d), C.R.S.; *Farner v. Cole,* 778 P.2d 688 (Colo.1989).

■ Here, the undisputed evidence establishes that Mr. Haberl received material information regarding the proposed subordination during a telephone conversation with an APE representative. At a minimum, he was alerted that the Bigelow subordination was "critical" and that his collateral would be impaired. It is also undisputed that he neglected to object to or voice any reservation about the proposed subordination during or after the conversation.

We recognize that: "Consent may be implied ... [b]ut mere knowledge of the release [of collateral] should not be deemed to be consent where the party's silence does not clearly indicate his lack of objection to the release." 5 W. Hawkland & L. Lawrence, *Uniform Commercial Code Series* § 3-606:12 (1984 ed.).

However, in this case, Mr. Haberl failed to present any evidence indicating that his silence did not clearly indicate his lack of objection to the subordination. Therefore, the undisputed evidence sufficiently supports the trial court's finding of consent by silence, *see Alamosa National Bank v. San Luis Valley Grain Growers, Inc.,* 756 P.2d 1022 (Colo.App.1988), and its finding will not be disturbed on review. *See Lothrop v. Union Bank,* 16 Colo. 257, 27 P. 696 (1891).

#### III.

Frank Haberl next contends that the terms of the executed subordination and assumption agreements are materially different from those contained in the original Bigelow note and rider, resulting in further impairment of his collateral. Therefore, he

maintains that he is discharged from liability as a surety inasmuch as he did not consent to the increased impairment. Again, we disagree.

A surety is discharged from his obligation on the liability only if the original contract has been materially altered without the surety's consent. *See Moss v. McDonald,* 772 P.2d 626 (Colo.App.1988); *see also People v. Smith,* 645 P.2d 864 (Colo.App.1982); Restatement of Security § 128(b) (1941).

Here, the undisputed evidence establishes that at the time APE refinanced the debt on the property, the debt cap provision in the original rider was not exceeded except with respect to two modest advances in payment of insurance and property taxes. Consequently, the trial court found that all material terms of the original subordination agreement to which Mr. Haberl consented had been complied with substantially and that Mr. Haberl was not prejudiced because the advances protected his collateral and inured to his benefit.

Under these circumstances, the trial court properly held that the terms of the agreements are substantially similar in all material respects and that Mr. Haberl should not be relieved from liability as a surety. *See National Union Fire Insurance Co. v. Denver Brick & Pipe Co.,* 162 Colo. 519, 427 P.2d 861 (1967); *see also Reynolds v. Armstead,* 166 Colo. 372, 443 P.2d 990 (Colo.1968).

### IV.

We also reject Mr. Haberl's contention that his consent to the subordination of the Bigelow deed of trust is ineffective since it was not given in writing.

The statute of frauds requires the surrender of an interest in land to be executed in a writing. Section 38–10–106, C.R.S. (1982 Repl.Vol. 16A). Therefore, the dispositive issue here is whether Mr. Haberl's interest in the Bigelow deed of trust is an "interest in land" which requires a writing when modified by consent by silence.

Many jurisdictions adopt the view that parties to mortgages and deeds of trust possess interests in land which fall within the ambit of the statute of frauds. *See* Restatement (Second) of Contracts § 127 comment a, illustration 1 (1981); *and Lambert v. Home Federal Savings & Loan Ass'n,* 481 S.W.2d 770 (Tenn.1972). Accordingly, "[t]he right of redemption from a mortgage is an interest in land within the Statute and a parol contract by the mortgagor to sell it to a third person, or to surrender it to the mortgagee, is unenforceable." 3 S. Williston, *Contracts* § 491 (W. Jaeger 3rd ed. 1960).

However, Colorado is a lien theory jurisdiction which adheres to the view that a mortgage, deed of trust, or other interest "intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance" but is, instead, a lien. Section 38–35–117, C.R.S. (1982 Repl.Vol. 16A); *Oken v. Hammer,* 791 P.2d 9 (Colo.App.1990).

In a lien theory jurisdiction, such a mortgage is a chose in action which creates a lien on the land but not an interest therein. Hence, "the statute of frauds does not bar a suit for damages upon an oral agreement to execute and deliver a mortgage upon real estate, since a mortgage does not transfer title, possession or any interest other than a naked lien." 3 S. Williston, *Contracts* § 491 (W. Jaeger 1991 Supp.); *Martyn v. First Federal Savings & Loan Ass'n,* 257 So.2d 576 (Fla.Dist.Ct.App.1971), *cert. denied,* 262 So.2d 446 (Fla.1972); *see* 3 S. Williston, *Contracts* § 492 (W. Jaeger 3rd ed. 1960); *see also Heron v. Weston,* 44 Colo. 379, 100 P. 1130 (1909).

Here, Mr. Haberl does not contend that his consent by silence impacted his title or right of possession to the property in any manner. Likewise, he does not assert that his right to redeem from any foreclosure on the Bigelow deed of trust was sold or surrendered. When these circumstances are viewed in light of the General Assembly's express intent that a mortgage or deed of trust creates a security interest, we conclude that Mr. Haberl's consent by silence concerned the modification

of a security interest, not an interest in land. We note, further, that the statute concerning impairment of collateral contains no requirement that the consent be in writing. Section 4-3-606, C.R.S.

Accordingly, Mr. Haberl's consent did not violate the statute of frauds.

## V.

■ Mr. Haberl next contends that, inasmuch as the assumption agreement is a new agreement which he did not execute in violation of § 4-3-401, C.R.S., he is not bound by it. We need not address this contention since Mr. Haberl is liable on the underlying obligation which he executed.

Section 4-3-401, C.R.S., provides that a person is not liable on an instrument unless his signature appears thereon. However, official comment 1 to this section states:

Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign [the assumption agreement] may still be liable on the original obligation for which the instrument was given, ... He may of course be liable under any separate writing.

In this case, the Bigelows asserted a claim for relief against Mr. Haberl based upon his obligation to pay the underlying Bigelow note which was incorporated into the assumption agreement.

Consequently, because Mr. Haberl is not relieved of his liability as surety for that obligation, *Cave v. Belisle,* 117 Colo. 180, 184 P.2d 869 (1947); *see Ruther v. Thomas,* 43 Colo.App. 435, 604 P.2d 703 (1979), his failure to execute the assumption agreement pursuant to § 4-3-401 does not bar the Bigelows' recovery on the underlying note.

## VI.

We are also not persuaded by Mr. Haberl's contention that the assumption agreement was a novation which results in APE's substitution as the original maker and grantor of the Bigelow obligations.

■ A novation substitutes a new party and discharges one of the original parties to a contract only upon agreement of all three parties. In addition, the old obligation must be extinguished. *Lampley v. Celebrity Homes, Inc.,* 42 Colo.App. 359, 594 P.2d 605 (1979); Restatement (Second) of Contracts §§ 423 and 430 (1979).

In this case, the terms of the assumption agreement did not discharge Mr. Haberl from liability as surety. Moreover, the agreement's plain language contemplates the continuing validity of the original obligation. Under these circumstances, a novation was not effected. *See United Bank v. Jefferson Industrial Bank,* 791 P.2d 1250 (Colo.App.1990).

## VII.

■ Finally, Frank Haberl takes issue with the trial court's ruling that he is estopped from asserting the defense of consent. However, the trial court's rationale is immaterial in light of its correct judgment, and therefore, we decline to review the validity of its rationale. *See People v. Cerrone,* 780 P.2d 562 (Colo.App.1989).

A finding of consent to impairment is all that is necessary to prohibit a party from asserting the defense of discharge pursuant to § 4-3-606(1)(b), C.R.S. *See Farner v. Cole, supra.* Consequently, the trial court's finding regarding estoppel is immaterial, *see Lathrop v. John,* 73 Colo. 304, 215 P. 472 (1923); *Mulford v. Rowland,* 45 Colo. 172, 100 P. 603 (1909), and entry of judgment is presumed to be correct. *Anderson v. Colorado State Department of Personnel,* 756 P.2d 969 (Colo.1988).

## VIII.

■ We next consider the Bigelows' appeal of the ruling dismissing their claims against Dorothy Haberl. The Bigelows specifically contend that Mrs. Haberl did consent to the impairment of collateral and, therefore, was not discharged from liability pursuant to § 4-3-606(1)(b). We disagree.

Section 4-3-606(1)(b) provides that "any party to the instrument" shall be discharged from liability thereon by a holder who unjustifiably impairs the party's collateral "without such party's consent."

Here, it is undisputed that Mrs. Haberl's collateral was impaired when the Bigelows subordinated their deed of trust to the Midland deed without directly securing her consent to impairment. Moreover, the Bigelows fail to assert any supporting authority for their argument that Mr. Haberl's consent to impairment constitutes consent on behalf of his wife.

Absent such authority, and under circumstances in which it is undisputed that Mrs. Haberl did not personally consent to impairment, the plain language of § 4-3-606(1)(b) operates to discharge Mrs. Haberl from liability on the Bigelow note.

### IX.

The final contention of error asserted by the Bigelows is that the trial court improperly apportioned attorney fees among Haberl and defendants APE, Nottingham, Hazouri, Giasafakis, Elliott, Merlin Resources, Inc., and American Property Equities 1984-A Ltd. as several liabilities. They also claim entitlement to recovery of attorney fees sustained upon appeal. We agree.

Because the Bigelow note provides that the obligors are liable for payment of "all reasonable costs of collection, including [a] reasonable amount for attorney's fees," the trial court properly awarded attorney fees in this breach of contract action. *See Buder v. Sartore*, 774 P.2d 1383 (Colo.1989).

However, it erroneously apportioned attorney fees among the defendants as several obligations, specifically, against Frank Haberl in the amount of $29,765.73 and against the APE group of defendants in the amount of $17,995.54, after finding them jointly and severally liable on the underlying note. *See Southwest American Life Insurance Co. v. Dunn*, 344 S.W.2d 948 (Tex.Civ.App.1961); *Combs v. Walters*, 518 P.2d 1254 (Wyo.1974).

Moreover, the Bigelows are entitled to recover reasonable attorney fees on appeal if the appeal is an expense incurred in collection of the note. *Converse v. Zinke*, 635 P.2d 882 (Colo.1981).

Therefore, the trial court's order allocating attorney fees must be modified so that the Bigelows are awarded the total amount of fees, including the amount of reasonable attorney fees to which they are entitled upon appeal, against the APE group of defendants and Frank Haberl, jointly and severally.

The judgments of the trial court (1) in favor of the Bigelows and against American Property Equities, Merlin Resources, Inc., David Nottingham, Philip Hazouri, James E. Giasafakis, and Richard Elliott; (2) in favor of Dorothy Haberl and against the Bigelows; (3) in favor of Frank Haberl and against American Property Equities, Merlin Resources, Inc., David Nottingham, Philip Hazouri, James E. Giasafakis, Richard Elliott, and American Property Equities 1984-A Ltd.; and (4) in favor of the Bigelows and against Frank Haberl are affirmed, except that those judgments (1) in favor of the Bigelows and against the APE group of defendants and (2) in favor of the Bigelows and against Frank Haberl are modified as to the allocation of liability for and apportionment of attorney fees. The cause is remanded to the trial court for a determination of the reasonable amount of additional attorney fees to which the Bigelows are entitled and which were incurred on appeal.

REED and MARQUEZ, JJ., concur.