[No. 8664.]

DUNCAN ET AL. v. GUILLET ET AL.

1.  APPEAL AND ERROR—*Abstract.*  Questions not presented by the printed abstract are not considered. (223.)

2.  ASSIGNMENT—*Of Chose in Action*, must, to be effectual, either in law or equity, amount to such an actual or constructive appropriation of the subject-matter assigned as to confer a complete and present right, even where the co-temporary exercise of the right is impossible. (224.)

The phraseology used is not important if the intention to transfer is manifest. (224.)

Perkins & Co. contracted with the United States to construct a certain work. Duncan and others were .sureties of Perkins & Co., in their contract. Perkins & Co. while proceeding with the work applied to plaintiffs for credit upon supplies, and to secure plaintiffs, made a written request to the Secretary of the Interior to send all checks which might be issued to them, for the work, to plaintiffs. Perkins & Co. having abandoned the work, the sureties assumed it, carried it to completion, and having possessed themselves of the checks, applied the money to discharge the expense of the work. Plaintiff thereupon brought their action against Duncan & Co. for the amount of the checks, alleging an assignment thereof and notice to Duncan & Co. *Held*, that the direction to the Secretary of the Interior to transmit the checks to plaintiffs did not amount to an assignment, even although there was an oral agreement by Perkins & Co. to endorse them, and that although the sureties received and collected the checks, they were not liable to plaintiffs for the amount. (222, 223.)

3. PRINCIPAL AND SURETY—*Rights of Surety*. In the same case, *held*, that even though there was an equitable assignment to plaintiffs, the right of the sureties related to the date of the bond, and was superior to that of plaintiffs under the assignment. (225.)

4. SUBROGATION—*Of Surety*. The surety having paid the debt for which he is bound, is, for his indemnification, at once subrogated to all rights, remedies and securities of the creditor. (226.)

5. EVIDENCE—*Burden of Proof*. The plaintiff. has the burden of establishing every averment material to his action which is put in issue by the answer. (224.)

*Error to Montezuma District Court.* Hon. W. N. SEARCY, Judge.

*Department.*

Mr. W. F. MOWRY, for plaintiffs in error.

Mr. H. M. HOGG, for defendants in error.

Opinion by Mr. JUSTICE TELLER.

The defendants in error were plaintiffs below in an action against plaintiffs in error, with one Lewis E. Perkins, and several other parties who are not concerned in this review.

Said Perkins and his brother, now deceased, entered into a contract with the United States, for the construc-

tion of a road across a national park. The plaintiffs in error became sureties on the bond of Perkins Brothers for the fulfillment of their contract with the government. In February, 1913, Perkins Brothers arranged with the Guillet Brothers for a credit on the purchase of supplies, while carrying out their contract. As a part of that agreement, they addressed the following letter to the Secretary of the Interior, under date of February 20, 1913:

"You are hereby requested to send all checks due the undersigned, or issued to them in payment of monies due them for work and material done and furnished by them in the construction and repair of that certain road to and across the Mesa Verde National Park in Montezuma County, Colorado, under that certain contract therefor with Louis C. Laylin, assistant secretary of interior, in care of Guillet Brothers, at Cortez, Colorado, and this shall be your authority therefor. Elmer W. Perkins, Lewis E. Perkins, doing business under the firm name and style of Perkins Brothers."

This letter is the basis of the action, the plaintiffs regarding it as an assignment of the fund.

They allege that the sureties had knowledge of the assignment.

This the sureties deny. They plead as a defense a contract, under date of June 21st, whereby the plaintiffs were required to pay all labor bills before they could apply any of the funds, to be paid them, to their own account.

The replication alleges fraud in the making of that agreement, and that it was cancelled by consent of the parties to it.

A day or two after the making of the contract above mentioned, the plaintiffs refused to give Perkins Brothers further credit, and the latter quit work on the road.

Plaintiffs in error, on the abandonment of the work

by Perkins Brothers, took charge of it, and Lewis Perkins thereupon countermanded the order of February 20th. When the sureties had completed the work, the government paid them the balance, less 20 per cent, and less, also, a deduction of $105 for a defect in the work.

The action is for the purpose of recovering from Perkins Brothers and the sureties all indebtedness arising from the furnishing of supplies, the plaintiffs claiming to have a lien upon the fund, due to the contractors from the government, by virtue of the order of February 20, 1913.

Judgment was rendered in favor of the plaintiffs against Perkins Bros. in the sum of $1,508.40; and against the plaintiffs in error in the sum of $1,255.56, any collection on it to be applied upon the judgment against Perkins Brothers.

It appears in evidence that the sureties received a payment from the government of $1,280, upon the estimate furnished for the work done by Perkins Brothers, and a payment of $2,560 for the work done by themselves.

The abstract is unsatisfactory in that it does not contain the evidence on some points discussed in the briefs. If either counsel desired this court to consider matters which are in the record and not in the abstract, he should have seen to it that they were before us in printed form.

The letter of February 20th to the Secretary of the Interior does not, as against the sureties, constitute an assignment. It will be observed that it provides merely for the sending of the checks to Perkins Brothers, in care of the Guillet Brothers. If, as it is contended, there was an oral agreement by Perkins Bros. to endorse the checks to Guillet Bros., it still falls short of being an assignment. In *Silent Friend Mining Co. v. Abbot*, 7 Colo. App. 76, 42 Pac. 318, eminent authorities are cited for the holding that:

"in order to constitute an assignment, either in law or equity, there should be such an actual or constructive appropriation of the subject-matter assigned, as to confer a complete and present right on the assignee, even where the circumstances do not admit of its immediate exercise. A covenant on the part of the debtor, to apply a particular fund in payment of the debt as soon as he receives it, will not operate as an assignment, for it does not give the covenantee a right to the funds, save through the covenantor, and looks to a future act on his part as the means of rendering it effectual.  *   *   *

The phraseology employed is not material provided the intention to transfer is mainfested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee."

The oral agreement, as stated in the record, is simply to endorse over to Guillet Bros. checks payable to the order of Perkins Bros. The latter could repudiate that agreement, leaving the other parties to their action for damages. Guillet Bros. had a right to the fund only through a future act on the part of Perkins Bros., and that is the fact which, under the authorities cited, prevents the order and the oral agreement from being an assignment. If it is not an assignment, the fund was not affected, and there was no right to pursue it into the hands of the sureties.

The complaint, by alleging that the sureties had notice of the assignment, seems to recognize that such notice was necessary to the right of recovery from them.

The denial of notice made it necessary for plaintiffs to prove it, if they depended on it as a part of their case.

This they did not do. There is no evidence that either of the sureties had any knowledge of the credit given to Perkins Bros., or of the order of February 20th.

Were that order an equitable assignment, the sureties' right to the fund, under the authorities, would still be superior to that of Guillet Bros. Their right relates back to the date of the bond, which was prior to the giving of the order.

In the case of *Prairie State Bank v. United States,* 164 U. S. 227, 41 L. Ed. 412, 17 Sup. Ct. 142, a somewhat similar case was presented. Sundberg & Company, under contract with the government to build a custom house, borrowed money of the bank in question, giving it authority to receive from the United States the final payment under the contract. The Acting Secretary of the Treasury declined to recognize such authority, but expressed a willingness to forward a check for such payment to the address of the bank's representative. Some time later, Sundberg & Co. defaulted, and the surety, without any knowledge of the alleged rights of the bank, assumed the completion of the contract. The action concerned the percentage retained by the government under the contract. The bank asserted an equitable lien as of the date when the agreement for sending the funds to the bank's representative was made. The surety claimed that his right related back to the date of the bond. The court said: "that Hitchcock, as surety under the original contract was entitled to assert the equitable doctrine of subrogation is elementary," and held that the surety's right of subrogation related back to the date of the original contract; and that he was subrogated to the rights which the United States might have asserted against the fund. The court further pointed out that any agreement, such as was made with the bank, if it gave a lien on the fund, would necessarily operate to impair rights acquired by the sureties under the original contract. The court, therefore, held that the rights of the contractors in the fund were subordinate to those of the United States and the sureties.

"The rule is that as soon as the surety pays the debt of his principal there arises in his favor an equity to be subrogated to all the rights, remedies and securities of the creditor, and has the right to enforce them against the principal for the purpose of his indemnification." *Hill v. King,* 48 O. St. 75, 26 N. E. 988.

Here the government could have appropriated to the completion of the work the entire fund, if necessary to pay therefor, and the sureties were subrogated to that right.

Unless, then, it be made to appear that they have collected on said contract more than enough to pay all the liabilities under it, there is no right of recovery against them. Such does not appear to be the case.

The judgment is accordingly reversed and remanded with directions for such further proceedings as are in harmony herewith.

*Judgment reversed.*

Mr. JUSTICE WHITE and Mr. JUSTICE HILL concur.

Decided November 6, A. D. 1916. Time granted to petition for rehearing. No petition filed.