**AMERICAN SURETY CO. OF NEW YORK v. CITY OF SANTA BARBARA et al. (two cases). ***

Nos. 6661, 6662.

Circuit Court of Appeals, Ninth Circuit.

March 7, 1932.

Haight, Mathes & Sheppard and James C. Sheppard, all of Los Angeles, Cal., for appellant.

Julien F. Goux, City Atty., of Santa Barbara, Cal., for appellee City of Santa Barbara.

Bailie, Turner & Lake, Norman A. Bailie, Richard A. Turner, and Allen T. Lynch, all of Los Angeles, Cal., for appellee Municipal Bond Co.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

The American Surety Company, appellant, executed a bond on behalf of George A. Simpson Company, contractor, for the benefit of laborers and materialmen furnishing labor or material for the street work which the contractor was to perform under and in pursuance of a contract with the street superintendent of the city of Santa Barbara, Cal., executed under the authority of and in

*Rehearing denied April 28, 1932.

compliance with the provisions of the Street Improvement Act of 1911 (Stats. 1911, p. 730, amended Stats. 1913 pp. 57, 78, 356, 540; Stats. 1915, p. 1464; Stats. 1919, pp. 480, 554; Stats. 1921, p. 217, et seq.; 1923, pp. 101, 114, 296) by virtue of the proceedings instituted by the city authorities of the city of Santa Barbara for the improvement of Chapala street between Montecito and Anapamu street, and certain other streets more particularly specified in the proceedings in the resolution of intention and contract. The bond was conditioned in accordance with the provisions of section 19 of said act. The surety company also executed a bond for the faithful performance of the work covered by said contract. The contract price was about $134,893.98. The bond for the faithful performance of the work was $33,725. The bond for the payment of labor and supplies was for the sum of $67,450. The work was completed and accepted. On December 1, 1926, and on the 23d of December, C. W. More, the street superintendent of the city of Santa Barbara, made and filed with the city clerk of the city an assessment upon the property benefited by said improvement. On December 23, 1926, the city council confirmed the assessment, and a warrant was thereto attached. The assessment, warrant, and diagram were recorded in the office of the superintendent of streets of the city of Santa Barbara on December 24, 1926. Certain claims for labor and material were filed with him prior to thirty days after the recording of the assessment for said work in conformity with section 19 of said Street Improvement Act (see foot-note) [1] as follows:

| | | | | | |
|---|---|---|---|---|---|
| December | 16, 1926, | claim | for | $ | 4,655.57 |
| " | 31, 1926 | " | " | | 19,346.56 |
| " | 31, 1926 | " | " | | 257.26 |
| October | 28, 1926 | " | " | | 15,569.38 |
| December | 20, 1926 | " | " | | 11,001.64 |
| September | 18, 1926 | " | " | | 1,613.65 |
| January | 18, 1927 | " | " | | 87.73 |

On December 24, 1926 appellant notified the appellees that it claimed a lien upon the warrant, assessment, diagram, and bonds to be issued in pursuance thereof; on the 25th of December, 1926, appellee city of Santa Barbara, its street superintendent and treasurer, delivered the warrant, assessment, and diagram to the appellee Municipal Bond Company as assignee of the contractor, George A. Simpson Company. The appellee Municipal Bond Company collected upon said assessment $84,490.08 and made return upon said assessment warrant as required by law, and thereafter received serial bonds issued in conformity with the act representing liens upon the several lots and parcels of land assessed for benefits derived from said improvement. These bonds, under the terms of the act, are not personal obligations of the lot owners and were not the obligations of the city. They are merely evidence of a lien upon the property by reason of the assessment thereon for said improvement (Cal. Street Improvement Act 1911, § 63, Deering's Gen. Laws of Cal. 1923, Act 8199, Cal. Stats. 1923, p. 278).

The foregoing facts are set up in appellant's bill in equity, and the trial court sustained appellees' motion to dismiss for lack of sufficient facts to support a decree in favor of appellant. From this decree complainant takes this appeal. Two separate actions were brought and two separate appeals taken. The facts stated in the two bills are the same, and the bringing of the second action is accounted for by the fact that the appellant desired to file a claim against the city of Santa Barbara as a basis for its action against the city. It alleged in the first bill that it had done so, but evi-

[1] Sec. 19. Every contractor, person, company or corporation, including contracting owners, to whom is awarded any contract for street work under this act, shall, before executing the said contract, file with the superintendent of streets a good and sufficient bond, approved by the mayor, in a sum not less than one-half of the total amount payable by the terms of said contract; such bond shall be executed by the principal and at least two sureties, who shall qualify for double the sum specified in said bond, and shall be made to inure to the benefit of any and all persons, companies, or corporations who perform labor on, or furnish materials to be used in the said work of improvement, and shall provide that if the contractor, person, company, or corporation to whom said contract was awarded fails to pay for any materials so furnished for the said work of improvement, or for any work or labor done thereon of any kind, that the sureties will pay the same, to an amount not exceeding the sum specified in said bond. Any laborer, materialman, person, company or corporation, furnishing materials to be used in the performance of said work specified in said contract, or who performed work or labor upon the said improvement, whose claim has not been paid by the said contractor, company or corporation, who executed the said contract, shall severally have a first lien upon and against the assessment, any partial assessment, any reassessment, and any bonds which may be issued to represent any assessment or reassessment. Such laborers, or materialmen may, at any time prior to thirty days after the recording of the assessment for said work, file with the superintendent of streets, a verified statement of his or its claim, together with a statement that the same, or some part thereof, has not been paid. At any time within ninety days after the filing of such claim, the persons, company, or corporation, filing the same or their assigns, may commence an action either to enforce the aforesaid lien, or on said bond, for the recovery of the amount due on said claim, together with the costs incurred in said action, and a reasonable attorneys' fee to be fixed by the court; for the prosecution thereof.

dently concluded that it might be unable to prove that allegation and therefore filed a new bill. The only distinction between the two cases is predicated upon the claim that the statute of limitations ran against plaintiff's claim between the dates of the two bills. If the trial court was correct in its conclusion that the bills failed to state facts sufficient to justify a recovery, it will be unnecessary to consider the two cases separately or to deal with the statute of limitations.

At the outset it should be noted that the appellant relies for recovery upon the principle enunciated by the Supreme Court in Prairie State Natl. Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, wherein it was held that a surety upon a government building contract, having completed the work on behalf of the defaulting contractor, was entitled to be subrogated to the right of the government in a 10 per cent. deferred payment which the building contract provided that the government would retain until the completion of the entire work and which it would have the right to forfeit if the contractor failed to fulfill his contract, which, among other things, required that he pay for all labor and materials used by it. The surety not only having finished the work, but also having paid labor and material bills of the contractor, was entitled by subrogation to the 10 per cent. payment withheld by the government as against an assignee of the contractor. This case and others cited by appellant are predicated upon the theory that the final payment retained by the owner in a building contract is to secure the faithful performance of the contract, and that the surety who was compelled to perform the work, or pay the claims of labor and material, on behalf of the contractor in compliance with his obligation to the owner, is entitled to be subrogated to the owner's rights in this fund intended as security to the owner for the performance of the obligation which has been assumed by the surety. See Henningsen v. U. S. Fid. & G. Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Riverview State Bank v. Wentz (C. C. A.) 34 F.(2d) 419; Exch. St. Bk. v. Federal Surety Co. (C. C. A.) 28 F.(2d) 485; Puget Sound St. Bk. v. Gallucci, 82 Wash. 445, 144 P. 698, Ann. Cas. 1916A, 767; Wasco County v. New England Equitable Ins. Co., 88 Or. 465, 172 P. 126, L. R. A. 1918D, 732, Ann. Cas. 1918E, 656; Duncan v. Guillet, 62 Colo. 220, 161 P. 299; Labbe v. Bernard, 196 Mass. 553, 82 N. E. 688, 14 L. R. A. (N. S.) 457; Road Commissioners v. Southern Surety Co., 216 Mich.

528, 185 N. W. 755; Hackensack Brick Co. v. Bogota, 86 N. J. Eq. 143, 97 A. 725; State ex rel. Southern Surety Co. v. Schlesinger, 114 Ohio St. 323, 151 N. E. 177, 45 A. L. R. 371.

In most of these cases the surety had completed the work agreed to be done by his principal, but in the case of Wasco County v. New England Equitable Ins. Co., supra, it is held that the surety who had paid the claims of laborers and materialmen incurred by his principal in a building contract with a county was entitled to subrogation to the rights of the county in the contract price still unpaid.

The principle enunciated in the foregoing cases is the right of the surety on a building contract to be subrogated to the rights of the owner in a fund retained by him under the terms of the contract as security for its performance and for the payment of labor and material used in such building. The appellees contend that there is no room for the application of this principle to the facts in the case at bar for the reason, among others, that there is no right upon the part of the city authorities to withhold from the contractor any payment, assessments, or bonds or anything of value to secure the payment of laborers and materialmen who have performed work upon the streets of the city which are being improved in accordance with the statute, and the proceedings and contract undertaken in compliance therewith. The Supreme Court of California has held in Los Angeles Rock & Gravel Co. v. Coast Const. Co., 185 Cal. 586, 197 P. 941, that there is no such right to retain the warrant or bonds, and, consequently, no right of subrogation.

The question as to the rights of a surety upon a contract for street improvement is not a new one in California. In Adamson v. Paonessa, 180 Cal. 157, 179 P. 880, it was held that, under the Street Improvement Act of 1911, Stats. 1911, p. 730, the surety upon a bond given for the payment of labor and material, as required by section 19 of that act, who had been compelled to make payment of claims for labor and material, was not entitled by subrogation to an interest in street improvement bonds and money derived from the contract for the reason that the statute gave such claimants no interest in or to that fund. Since that time the statute was amended to give the laborers and materialmen a lien upon said assessments and bonds, as more fully shown in section 19 of the act of 1919 set out in the note. Appellant's contention is largely based upon the effect of

this amendment giving the materialmen and laborers a lien on the assessments and bonds, and the consequent claim that it is entitled to be subrogated to the rights therein of the materialmen and laborers whose claims it has paid.

■■ There is no contention advanced here that the appellant has acquired any right other than by subrogation either to the rights of the city or to the rights of the laboring men and materialmen whose claims it has paid. The principle of the case of Adamson v. Paonessa, 180 Cal. 157, 179 P. 880, supra, is no longer applicable to the situation here involved by reason of the amendment of 1919 to section 19, supra, but it is clear that, if the appellant surety has any right superior to that of an assignee in the bonds and assessments resulting from performance of the work, it is because of such amendment. The laborers and materialmen filed their verified claims with the superintendent of streets in accordance with the provisions of section 19 of the Street Improvement Act of 1911, as amended in 1919, thus preserving a lien against the assessment and bonds to be issued to represent the same. Within 90 days after filing such claim the laborers or materialmen were authorized to commence action to enforce the lien or, at their election, to bring an action against the surety upon the bond for the payment of laborers and materialmen. It is clear, we think, under well-established principles with reference to mechanics' liens, that the lien of the laborers and materialmen given by section 19 of the Street Improvement Act, supra, terminates at the end of 90 days, unless an action is brought for the enforcement of the lien as therein provided. If the surety, during the 90-day period, had paid the claims rather than await the election of the claimants as to whether they would bring suit to enforce their lien or suit to recover from the surety, it cannot be doubted, we think, that the surety would be subrogated to their lien upon the assessments and could have proceeded in their name or in its own for the enforcement of their rights to which by its payment it had been subrogated. The surety, however, waited for nearly two years before paying the obligations it had become surety for and until long after the rights of the claimants to subject the assessments to their lien had expired. This delay is fatal to the claim of the appellant.

Whatever rights the appellant might have secured in and to the bonds and assessments by reason of the prompt payment of the lien claimants has been lost by its delay beyond the period which required action upon the part of the claimants to perfect and continue their lien. Aside from the claim of subrogation, the appellant makes no showing entitling it to equitable relief either against the city or the Municipal Bond Company. As to the city authorities there is no merit whatever in appellant's claim. The city had no interest in the fund derived from the performance of the contract and no power over it. As to the assignee of the contractor, we must assume, as against the appellant, that it has no equitable rights superior to those of the Municipal Bond Company which so far as it appears may have advanced the money for the performance of the work, and completed the work for the insolvent contractor, thus exonerating the bond given by the appellant for the faithful performance of that work. So far as appears from the complaint, the assignment may have been made with the express knowledge and consent of the appellant and for the very purpose of enabling the work to be completed. The appellant has submitted its case upon the abstract theory of subrogation, and, as we have already said, the belated payment by it of the obligations it had agreed to pay in the event of the default of the contract was too late to entitle it under the law to resort to the fund derived from the performance of the contract.

Decrees affirmed.