Patricia A. CLOUD, Elaine M. Bradley and Norwest Bank of Colorado Springs, N.A., Trustee under the Will of Paul C. Brown, Plaintiffs–Appellees.

v.

The ASSOCIATION OF OWNERS, SATELLITE APARTMENT BUILDING, INC. and Gertrude Murphy, J.L. Tucker, Celia Rasor, Henry Willie, Lorraine McCarty, Arnold Schneebeck, Jack Nelson, Doris Shaeffer, and Art Herzberger, as Members of the Board of Directors of said Association of Owners, Satellite Apartment Building, Inc., Defendants–Appellants.

No. 91CA1083.

Colorado Court of Appeals, Div. II.

Oct. 22, 1992.

Rehearing Denied Feb. 25, 1993.

Certiorari Denied Aug. 30, 1993.

Strand, Meadows and Webb, Edwin Strand, Colorado Springs, for plaintiffs-appellees.

Michael R. Bromley, P.C., Michael R. Bromley, Colorado Springs, for defendants-appellants.

Opinion by Judge PLANK.

The defendants, Association of Owners, Satellite Apartment Building, Inc., (Association) and members of its board of directors, appeal from a summary judgment entered against them in favor of the plaintiffs, Patricia A. Cloud, Elaine M. Bradley, and Norwest Bank of Colorado Springs, N.A., Trustee under the Will of Paul C. Brown. We affirm.

Construction of the Satellite Apartment Building, a condominium complex, was completed in 1969, and on April 24, 1969, the Colorado Condominium Corporation (declarant), as developer and owner, published and recorded its condominium declaration (declaration) pursuant to C.R.S.1963, 118–15–1 to 118–15–5. The declaration defines the character, duration, rights, obligations, and limitations of condominium ownership. Paul C. Brown, Gerald P. Wagner, and their attorney were the officers and directors of the declarant, and Brown and Wagner were its sole shareholders.

The Association was created by the declaration. At that time, the declarant owned all of the land, building, units, common elements (including the guest rooms), and other appurtenances to the Satellite Apartment Building.

Bylaws for the Association were published and recorded. Contemporaneously, an agreement naming the Satellite Management Co., a sole proprietorship of Paul C. Brown, as the managing agent for the Association was published and recorded.

The condominium declaration, the bylaws of the Association, and the management agreement were all recorded on the same day. The bylaws were signed by Brown as president of the Association.

Among the requirements in the declaration is a provision for 80 "guest rooms" which are commonly owned by the condominium owners. The declaration provides that 10% of the gross receipts from the guest rooms are to be paid to the declarant with the balance (90%) distributed to the Association for payment of common expenses. Common expenses are defined in the declaration.

The management agreement between Brown and the Association stated that his only compensation for management services was the 10% gross receipts payment to the declarant identified in the declaration. In January of 1978, because of ill health, Brown stopped managing the Satellite Management Company, Inc. Subsequently, the Satellite Apartment Building was

managed by the Association or their selected managing agent.

The distribution of 10% of the gross receipts to the declarant began in 1969 and continued until May of 1983 when the declarant was dissolved, and its interests assigned to the plaintiffs. The payments continued until October of 1989, when the Association refused to continue the distribution of 10% of the gross receipts from the guest room receipts.

The plaintiffs then filed this action for a declaration of rights, the payments of the 10% of gross receipts past due, and an injunction, interest, and attorney fees. The case was presented to the trial court by stipulation of facts.

The trial court found the Association bound by the declaration and that, so long as the rents are collected on the guest rooms, 10% of the gross rents from rooms must be paid to plaintiffs, their successors, and assigns. It further ruled that, upon any failure of the defendants to perform, an order for specific performance or mandatory injunction would be entered against them, their successors, or assigns. The court denied attorney fees for the plaintiffs.

## I.

The Association first contends that the trial court erred in ruling that the reservation of 10% of the gross receipts to the declarant was not void as a violation of the rule against perpetuities or was not an unreasonable restraint on the alienation of property. We disagree.

### A.

■ The rule against perpetuities provides that no interest in real property is valid unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest. *Cambridge Co. v. East Slope Investment Corp.*, 700 P.2d 537 (Colo.1985). Thus, the rule against perpetuities invalidates any interest which vests too remotely; it does not invalidate every perpetual interest.

■ Here, the ownership of the common elements of the hotel, including the 80 hotel rooms, vested immediately in the condominium association when the declaration was recorded, and at the same time the declarant's interest in 10% of the gross receipts from the hotel operation was vested. Hence, the rule against perpetuities does not defeat plaintiffs' interest.

### B.

■ Defendants also argue that the condominium declaration requires the Association to operate 80 guest rooms as a hotel in perpetuity and that such a requirement is an unreasonable restraint on alienation. We find nothing in the declaration that requires the owners of the Association to operate the common area guest rooms perpetually, only that a decision to cease operation be unanimous among the owners and that, as long as the Association operates the guest rooms, 10% of the gross receipts from the operation shall be paid to the plaintiffs. The bylaws also provided that the Satellite Managing Co. and any of its assignees would receive nothing other than 10% gross receipts from the hotel rooms for services performed by it.

The declaration states both that the covenants "run with the land" (binding successors in interest) and that the covenants may be changed by a unanimous vote of the owners. A similar arrangement was upheld in *Brown v. McDavid*, 676 P.2d 714 (Colo.App.1983). The two provisions, taken together, mean that the covenant is binding unless and until the owners unanimously vote to cease operation of the guest rooms.

The trial court found the condominium units freely transferable. There was no evidence of impairment of marketing of the condominium units, no evidence of failure of any sale because of this 10% reservation, nor any other unreasonable restraint against the transfer of such units. The court found that the reservation of 10% of the gross receipts was not an unreasonable restriction upon alienation. Based on the record, we agree with the trial court's conclusion. While the Association may believe it would be better off if it was allowed to

keep the 10% gross receipts, it legally is committed to the agreement it made in 1969, and its property is not so harmed by the covenant to be an unalienable restraint. *See generally Sedalia Land Co. v. Robinson Brick & Tile Co.*, 28 Colo.App. 550, 475 P.2d 351 (1970) (party will not be relieved of obligations of contract merely because it has become improvident as to it).

## II.

The defendants next contend that the trial court erred in failing to find that the developer, as a corporate officer of the Association, breached a fiduciary duty owed to the corporation. We disagree.

The developer, Brown, was president of the Association as well as president and one of the two shareholders of the declarant when the declaration and management agreement were created. Brown was also, through the Satellite Management company, the original managing agent for the Satellite. In these capacities, he signed the condominium declaration, the original management agreement, and the bylaws for the Association.

Promoters of a corporation are in a fiduciary relationship to the corporation subsequently formed. *Swafford v. Berry*, 152 Colo. 493, 382 P.2d 999 (1963). Corporate directors and officers are also fiduciaries of the corporation. *Unicure, Inc. v. Thurman*, 42 Colo.App. 241, 599 P.2d 925 (1979).

Further, although a contract between two corporations having all or part of their directors in common is not void, it is subject to the closest scrutiny by the courts and will be held voidable if it is found to be unfair, even lacking any evidence of fraud. *Colorado Management Corp. v. American Founders Life Insurance Co.*, 145 Colo. 413, 359 P.2d 665 (1961).

Here, the Association has offered no evidence of fraud, unfairness, or concealment. The declarant's reservation of 10% gross receipts from the hotel as long as it operated was unambiguously set forth in the condominium declaration. Not only did the Association members receive a copy of it when purchasing a unit, but the declaration was duly recorded in the public records.

While such a reservation may not be common, it is not unfair nor unconscionable. *See Point East Management Corp. v. Point East One Condominium Corp., Inc.*, 282 So.2d 628 (Fla.1973) *cert. denied*, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974) (in action by condominium association against developer who was also the original association member and general manager for contract with alter ego for 25-year management contract and for lease of 99 years of adjoining recreational common area, no breach of duty, breach of contract, nor fraud shown where all facts of contract were available to buyers); *Holiday Out In America At St. Lucie v. Bowes*, 285 So.2d 63 (Fla.App.1973) (declaration of condominium that granted developer exclusive right to rent units held not to be restraint on alienation, even if property less valuable). In fact, the arrangement as a whole benefits individual condominium owners by offsetting their maintenance costs for the common areas of the building through the profits made from the 90% of gross receipts placed into the Association's fund to be used for payment of common expenses. As the trial court stated, "The relationship between the developer, the Owners Association and the managing agent, even though the personalities are the same, are endemic to condominiums...."

Colorado law supports this conclusion. In *Swafford v. Berry, supra*, during the transformation of a family-owned ski area into a corporation, the family traded the assets of the business for stock. Another stockholder objected to the fact that the family traded the assets for an amount of stock greater than the family's out-of-pocket costs for the assets, even though the amount of stock to be traded was disclosed to prospective stockholders by the family before the corporation was formed. The court held there was no breach of a fiduciary duty since the family had "spent years of hard work in developing, maintaining,

rebuilding and extending the ski area and business."

We agree with the trial court's findings that there was full disclosure and fairness to the Association.

## III.

◼ The defendants next contend that the trial court erred in ruling that the 10% reservation of gross receipts was a covenant that runs with the land, rather than a personal covenant to Brown. We disagree.

◼ First, if in fact the covenant were to be found personal in nature, it would not be personal to Brown, but rather the declarant, in this case the now-dissolved Colorado Condominium Corporation. The fact that Brown was the sole proprietor of the Satellite Management Co., and even that he did not charge a fee for his services as the Satellite's manager, is irrelevant to the issues in this case. The covenant in question directs the 10% gross receipts to be paid to the Colorado Condominium Corporation, without tying the receipts in any way to the management or development of the Satellite or its general manager.

◼ Unlike personal covenants, which operate like a general contract provision and bind only the actual parties to the covenant, real covenants "run with the land" and burden or benefit successors in interest. In order for a covenant to run with the land, there must first be an intent by the parties to the covenant that it do so. *Brown v. McDavid, supra.*

Here, that intent is present since the declaration specifically states: "The following ... covenants ... shall be deemed to run with the land, shall be a benefit and a burden to Declarant, its successors and assigns and any person acquiring or owning an interest in the real property and improvements, their grantees, successors, heirs, administrators, devises or assigns."

◼ Even if there is an intent to make a covenant run with the land, the covenant must still "touch and concern" the land, that is, it must closely relate to the land, its use, or its enjoyment. *Bige-*

*low v. Nottingham,* 833 P.2d 764 (Colo. App.1991). If a document such as a deed is unambiguous on its face, the nature and extent of the interest contained in it must be determined without regard to extrinsic evidence. *O'Brien v. Village Land Co.,* 794 P.2d 246 (Colo.1990). A trial court's determination that a covenant runs with the land based solely on the court's interpretation of the covenant document does not bind the appellate court. *Brown v. McDavid, supra.*

The covenant in question in this case states as follows:

(4) Eighty (80) guest rooms located on the apartment floors ... shall be reserved for the use as rental units to guests of Satellite Condominium owners or others seeking hotel type lodging, provided that the Declarant reserves unto itself, its successors and assigns, the exclusive and irrevocable right to occupy and use these common element rooms as hotel rentals, together with ingress and egress thereto, without payment of rent or charges therefor to any of the owners of undivided interest, except as provided for in subparagraph 4(c) of this paragraph 4.

. . . .

(c) The Managing Agent shall rent said guest rooms at a rate comparable to like facilities in the Colorado Springs, Colorado area. Rent monies collected from these rooms shall be deposited in the Agency Fund, and accounted for separately by the Managing Agent. This account shall be duly audited as directed by the Board of Directors but not less than semi-annually. Upon completion of each audit, or more often at the direction of the Board of Directors, Association of Owners, ten (10) per cent of the gross rent receipts from said rooms shall be paid to the Declarant. The balance of the rent receipts shall be deposited to the Association Owners Fund to be used for payment of common expense.

◼ A covenant granting a 10% reservation of receipts standing alone would be

personal, because the payment would not be a benefit or burden to the land. We must, however, read the covenant as a whole. *TriState Generation & Transmission Co. v. Thornton,* 647 P.2d 670 (Colo. 1982); *Richey v. Olson,* 709 P.2d 963 (Colo. App.1985).

Here, the 10% reservation to the declarant is coupled with a 90% reservation to the Association. The proceeds of 90% of the gross receipts by the Association is a benefit to the Association which runs with the land, and we cannot separate it from the 10% reservation to the declarant.

In essence, the Association is asking the court to cut and paste the covenant before us. That we cannot do without destroying it in its entirety. If 100% of the owners agree to change the covenant, which benefits and burdens the property each of their properties reciprocally, they may do so. This court, however, is not at liberty to rewrite written covenants. *Richey v. Olson, supra.*

Accordingly, the judgment of the trial court is affirmed.

SMITH and TURSI, JJ., concur.