**LOOKOUT MOUNTAIN PARADISE HILLS HOMEOWNERS' ASSOCIATION, a Colorado nonprofit corporation, Plaintiff–Appellee,**

v.

**VIEWPOINT ASSOCIATES, a Colorado general partnership, Defendant–Appellant.**

No. 92CA0989.

Colorado Court of Appeals, Div. V.

June 17, 1993.

Rehearing Denied July 15, 1993.

Certiorari Denied Feb. 7, 1994.

DeMuth & Kemp, Lael S. DeMuth, Barbara G. Chamberlain, Denver, for plaintiff-appellee.

Deutsch, Spillane & Reutzel, P.C., John M. Spillane, Englewood, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Viewpoint Associates, (Viewpoint) appeals from the declaratory judgment in which the trial court found that plaintiffs, Lookout Mountain Paradise Hills Homeowners' Association (Homeowners' Association) had the right of architectural control over lots owned by Viewpoint. We affirm.

The property in question is part of a subdivision platted by Paradise Hills, Inc. (PHI) and on which, in 1958, PHI recorded protective covenants. As relevant here, that declaration of covenants provides that PHI has the right of architectural control and that PHI could, "by appropriate agreement, assign or convey to any person, persons or corporation" that right or, at its sole discretion, could cause to be formed a non-profit homeowners' corporation to which PHI could assign its right of approval.

Over the next 22 years, PHI conveyed lots to individual grantees until, in 1980, it conveyed to Viewpoint all lots remaining in the Paradise Hills subdivision. Included in this conveyance were the lots that are the subject of this controversy.

In July 1981, approximately one year after PHI had thus sold all of its lots, PHI formed the Homeowners' Association. This was accomplished with the cooperation and participation of Viewpoint, and Viewpoint's developer served as the Association's initial director. According to the articles of incorporation, the purpose of the Homeowners' Association was to "assume the responsibility for the management and enforcement of the protective covenants of the various Paradise Hills Units, including the organization and operation of an Architectural Control Committee for the approval of plans pursuant to the protective covenants for the various Units."

In September 1981, Viewpoint recorded certain additional, more stringent restrictive covenants to which the Viewpoint lots were subject, creating another architectural control committee to which purchasers of these lots were required to submit plans. As found by the trial court, these covenants did not replace the original Paradise Hills covenants, but added a second layer of restrictions on the Viewpoint property, thus subjecting Viewpoint owners to both sets of restrictive covenants.

In November 1981, the Homeowners' Association received from PHI an assignment of PHI's rights and interests as grantor under the original covenants, "including, but not limited to the right to approve building or other improvement plans on any structures" in the subdivision. At issue in this action is the validity and effect of this assignment.

Over the next seven years, only one home was built that was subject to both sets of covenants. The plans for that home were submitted to and approved by Viewpoint only. The Homeowners' Association took no action.

Then, pursuant to a 1988 option to purchase, some of the subject lots were acquired from Viewpoint by a third developer, Genesee Company. During subsequent construction by Genesee of approximately 30 homes, Genesee submitted all construction plans to both the Viewpoint architectural control committee and the Homeowners' Association's architectural control committee. However, submission of plans to Paradise Hills was under express reservation by Genesee concerning its authority to approve or disapprove the plans. In 1990, a dispute arose between Genesee and the Homeowners' Association over certain homes that were not in compliance with previously approved plans.

When Genesee further challenged its right of architectural review, the Homeowners' Association filed this declaratory action to resolve the dispute. It sought, *inter alia,* injunctive relief and a declaratory determination of the legal rights and authorities of the architectural control committee established by the Homeowners' Association as it pertained to properties owned by Genesee. After the option to purchase expired and certain of the subject lots reverted to Viewpoint, Viewpoint was allowed to intervene as a party defendant.

After a trial to the court, the trial court found that, pursuant to the assignment from PHI, the Homeowners' Association assumed the authority to approve or disapprove plans for the entire Paradise Hills subdivision, including the lots now owned by Viewpoint and Genesee. This appeal, by Viewpoint only, followed.

I.

Viewpoint contends that the Homeowners' Association failed to prove that the authority of PHI to perform architectural review had been assigned to it. Specifically, Viewpoint argues that the written assignment was invalid because it did not, on its face, designate an assignee. We disagree.

To constitute a valid assignment, no particular formality is required. However, the intent to make the assignment must be apparent. *Duncan v. Guillet,* 62 Colo. 220, 161 P. 299 (1916). That intent may be reflected by the written instruments executed by the parties or may be inferred from the

acts and conduct of the assignor, and it is a question of fact. *See Metropolitan Life Insurance Co. v. Lanigan,* 74 Colo. 386, 222 P. 402 (1924); *Heritage Bank v. Recreational Retail Builders, Inc.,* 97 Ill.App.3d 748, 53 Ill.Dec. 189, 423 N.E.2d 573 (1981) (may be inferred from surrounding circumstances).

■ Here, PHI executed a written document, denominated an "assignment," which by its terms assigned PHI's "right to approve building or other improvement plans on any structures located on the above described Paradise Hills Subdivisions." It was signed by both the vice-president and by the secretary/attorney for PHI.

Although the grantee was not designated on the document, the document was delivered to the Homeowners' Association with an explanatory letter addressed to the Association. That letter, drafted and signed by the secretary/attorney of the assignor PHI, stated in relevant part:

> On behalf of [PHI], I am enclosing an assignment of the rights of [PHI] as the original grantor under the original protective covenants ... In accordance with the terms of those covenants, and with the organization of the [Paradise Hills Homeowners' Association], the rights and duties of the grantor in the covenants now [rest] with the [Homeowners' Association]. This assignment conveys any rights that [PHI] has in these covenants. Included is the right to approve building or other improvement plans in accordance with the covenants.

This assignment to the Homeowners' Association is consistent with the original declaration of covenants providing that PHI had discretion to form a homeowners' corporation to which PHI could assign its right of architectural control. Moreover, the assignment is consistent with the articles of incorporation of the Homeowners' Association.

In light of these facts and circumstances, the trial court did not err by concluding that there was a valid assignment to the Homeowners' Association of the right of approval. *See Alpine Associates, Inc. v. KP & R, Inc.,* 802 P.2d 1119 (Colo.App.1990).

## II.

Viewpoint next contends that, even if the assignment was valid, it had no legal effect because at the time that it was executed, PHI no longer had the right of architectural control. Specifically, Viewpoint argues that the right runs with, or is appurtenant to, the land and, thus, passed automatically to Viewpoint through the deed. In the alternative, Viewpoint argues that the right was personal and was extinguished when PHI conveyed away all of its interest in the subdivision. Because we conclude that here the right runs with the land, we do not address the alternate contention. We disagree, however, that the right was conveyed to Viewpoint through the deed.

## A.

■ Unlike personal covenants, which operate like a general contract provision and bind only the actual parties to the covenant, real covenants "run with the land" and burden or benefit successors in interest. *Cloud v. Ass'n of Owners,* 857 P.2d 435 (Colo.App. 1992).

■ In order for a covenant to run with the land, not only must the parties to the covenant intend that it do so, *Brown v. McDavid,* 676 P.2d 714 (Colo.App.1983), but the covenant must "touch and concern" the land. *Bigelow v. Nottingham,* 833 P.2d 764 (Colo.App.1991). That is, it must closely relate to the land, its use, or its enjoyment. *Cloud v. Ass'n of Owners, supra. Cf. Bain v. Doyle,* 849 P.2d 910 (Colo.App.1993) (appurtenances generally refer to intangible rights that necessarily must be conveyed for the beneficial use of the property).

■ Whether a covenant runs with the land turns on the construction of relevant documents. *See Cloud v. Ass'n of Owners, supra.*

■ Here, the pertinent covenant states:

> [N]o single-family dwelling or other improvements as herein defined shall be erected, placed, or altered on any premises in said development until the building or other improvement plans [have] been sub-

mitted to and approved in writing [by] Grantor.

According to the declaration of covenants, the "covenants herein set forth shall run with the land and bind the present owner, its successors and assigns." Thus, by express language, this covenant was intended to run with the land.

Further, among the covenants' stated purposes are "to protect the owners of building sites against such improper use of surrounding building sites as will depreciate the value of their property; to preserve insofar as practical, the natural beauty of such property; [and to] insure the highest and best development of said property." This particular covenant, imposed for the benefit of the entire subdivision, requires that owners submit for PHI's approval plans for any buildings or other improvements which they want to place on the land.

We have no trouble concluding that this covenant relates to the land, see Cloud v. Ass'n of Owners, supra, and thus, touches and concerns the land. See Norris v. Phillips, 626 P.2d 717, 719 (1980) (requirement that owners submit building plans for approval is "one method by which guarantees of value and general plan of construction can be accomplished and maintained").

Because the parties intended for the covenant to run with the land and because the covenant touches and concerns the land, we conclude that it is a covenant running with the land. See Cloud v. Ass'n of Owners, supra. Cf. Julian v. Lawton, 240 N.C. 436, 82 S.E.2d 210 (1954) (court construed similar covenant as personal because it was designed merely to satisfy grantor's aesthetic sense and not intended to benefit successors or purchasers); but see Smith v. First Savings of Louisiana, FSA, 575 So.2d 1033 (Ala.1991) (in action by homeowners to reform plat covenants to permit them to elect members to the architectural control committee, court found that covenant designating grantor as sole member of that committee was a personal covenant).

### B.

Viewpoint, focusing only on that portion of the covenant granting approval rights to PHI, further contends that this authority runs with the land and passed to Viewpoint by deed upon conveyance of the real property from PHI. We disagree.

■ Restrictive covenants must be construed as a whole and interpreted in view of their underlying purposes, giving effect to all provisions contained therein. Wilson v. Goldman, 699 P.2d 420 (Colo.App.1985). Here, application of these principles to the declaration of covenants does not support Viewpoint's contention.

■ First, by separating from the covenant PHI's right of approval and asserting that the actual approval authority passes from PHI to Viewpoint, Viewpoint misinterprets the covenant and misconstrues the purpose and intent of the parties. See Cloud v. Ass'n of Owners, supra (court will not cut and paste a covenant before it).

Under the declaration, PHI's power of approval is an integral part of the whole covenant requiring owners to submit plans for its approval. It is not the right of approval, in isolation, which is intended to run with the land. Rather, it is the entire covenant—both the obligation of the grantees to submit plans together with the beneficial right reserved to PHI to review such plans—that passes to successive grantees. See Cloud v. Ass'n of Owners, supra (covenant ran with the land because it was coupled with covenant which benefitted the land, although it would have been personal if standing alone).

Moreover, Viewpoint's interpretation leads to an illogical result. The declaration of covenants establishes a single approval authority to which all grantees must submit plans. The purpose is to assure to all owners a conformance to a general plan of construction. See Rhue v. Cheyenne Homes, Inc., 168 Colo. 6, 449 P.2d 361 (1969). It defies reason that some portion of that authority was parceled off by deed each time grantor conveyed property to a grantee. See Pulver v. Mascolo, 155 Conn. 644, 237 A.2d 97 (1967) (right of approval was intended to be exercised by grantor, not by individual grantees); Patrone v. Falcone, 345 Mass. 659, 189 N.E.2d 228 (1963) (unlikely that the

common grantor could have intended to give this power of approval to each of the grantees).

Further, if restrictive covenants specifically set forth the manner or procedure for effective transfer of authority to approve or disapprove plans, then such procedure must be complied with for the transfer to be effectuated. *See Howells v. Johnson,* 676 P.2d 1240 (Colo.App.1983).

Here, the declaration provides that the right of approval may be transferred, if at all, at PHI's option; that the transfer must be by "appropriate agreement"; that PHI may transfer any one or more of its beneficial interests; and that such transfer may be to any person, persons, or corporation, or to a homeowners' association created for that purpose.

In our view, this deed by which Viewpoint claims that the right of approval automatically passed demonstrates no agreement, "appropriate" or otherwise, concerning a transfer of PHI's right of approval to Viewpoint. On the other hand, by express language in the deed, Viewpoint acquired title to the land "[s]ubject to easements, restrictions, right of ways and reservations of record, including those contained in [the] protective covenants." One such reservation would be PHI's right to approve plans. *See* H. Fusilier, *Real Estate Law* § 5.7 (1977) ("subject to" language in deed indicates exceptions to general rule that property is conveyed free and clear of all encumbrances and restrictions); *Barker v. Jeremiasen,* 676 P.2d 1259 (Colo.App.1984) (purchasers received deed "subject to" protective covenants and were thus bound by them).

In view of the specificity with which the transfer of this right is addressed in the covenants, we agree with the trial court that this deed was not intended by PHI to work as a transfer of that right. *See Howells v. Johnson, supra.*

■ Viewpoint asserts, nonetheless, that the parties contemplated transfer of that right as evidenced by the provision in the contract for sale which states that "seller agrees upon request of purchaser to assign to purchaser all of seller's rights as declarant

under the restrictive covenants." However, since Viewpoint's developer and its attorney testified that they did not ask PHI to assign those rights, the existence of this contract provision is irrelevant. Moreover, at closing all provisions of the contract merged into the deed. Thus, the rights of the parties are determined by the deed, not the contract. *See Feit v. Donahue,* 826 P.2d 407 (Colo.App. 1992).

Supported as the trial court's ruling is by the evidence, we conclude that the trial court properly found that PHI did not convey its right of architectural control to Viewpoint by this deed.

III.

Viewpoint finally contends that even if the assignment of the right of architectural control was effective, the Homeowners' Association, by its long acquiescence in not asserting its right of architectural control, is precluded from asserting that right under the equitable doctrines of waiver or estoppel by reason of delay or laches. We disagree.

■ The doctrine of estoppel by reason of delay or laches involves full knowledge of the facts, unreasonable delay in assertion of available remedy, and intervening reliance by and prejudice to another. *Manor Vail Condominium Ass'n v. Town of Vail,* 199 Colo. 62, 604 P.2d 1168 (1980).

■ Waiver is the intentional relinquishment of a known right. If relinquishment is implied by conduct, that conduct must clearly manifest the intention not to assert the benefit. *Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984).

■ Whether these equitable defenses have been established is a question of fact. *P–W Investments, Inc. v. City of Westminster,* 655 P.2d 1365 (Colo.1982); *Nikolai v. Farmers Alliance Mutual Insurance Co.,* 830 P.2d 1070 (Colo.App.1991).

■ Here, the trial court found that only one home was constructed between 1981 and 1988 on the Viewpoint property and that the Association took no action to enforce its right of approval even though the owner of that

home failed to submit its plans to the Homeowners' Association. It further found that in 1988, when subsequent construction began, the Homeowners' Association required all plans to be submitted to it for approval. In light of these findings, the trial court, specifically noting that for seven years no construction took place in the subdivision, concluded that the circumstances did not support equitable relief.

Implicit in the court's determination is a finding that the Homeowners' Association's inaction with regard to the one Viewpoint home built in 1981 was not an intentional relinquishment of its right of control and that its delay was not unreasonable. As these findings are supported by the record, we will not disturb the trial court's determination on appeal.

Insofar as Viewpoint argues that this action is barred by the statute of limitation, we observe that this was not pleaded in its answer and, thus, will not be addressed for the first time on appeal. *See Christensen v. Hoover*, 643 P.2d 525 (Colo.1982).

The judgment is affirmed.

HUME and TAUBMAN, JJ., concur.