**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-10872

TBI EXPLORATION , INC., formerly known as
Presidio Exploration, Inc.,

Plaintiff-Appellant,

versus

BELCO ENERGY CORP ,

Defendants-Appellee.

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

June 14, 2000

Before EMILIO M. GARZA, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

This case involves a dispute regarding undrilled oil wells in Wyoming. For the reasons below,

we affirm the district court's grant of summary judgment.

[*] Pursuant to 5ᵀᴴ CɪR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CɪR. R. 47.5.4.

FACTUAL AND PROCEDURAL HISTORY

Bannon Energy, Inc. ("Bannon") and Presidio Exploration, Inc. ("Presidio") entered a Participation Agreement in which Bannon agreed to drill exploratory wells on oil and gas leasehold interests in Wyoming in exchange for the rights and interests from those wells from Presidio. The Agreement provided that Bannon would pay Presidio liquidated damages if Bannon failed to drill the specified wells. The Participation Agreement also contained an assignment clause which provided that the assigning party had to notify and get approval from the non-assigning party prior to an execution of an assignment.

Subsequently, Presidio was merged into TBI Exploration, Inc. ("TBI"). Bannon assigned 99% of its interests in the Participation Agreement to Belco Energy Corp. ("Belco"). Pursuant to the assignment clause in the Participation Agreement, Bannon received consent from TBI to enter the assignment. Belco did not drill the exploratory wells specified in the Participation Agreement.

Consequently, TBI, a Colorado corporation, filed suit in Texas federal district court against Belco, a Nevada corporation, claiming breach of contract.[1] TBI sued for $850,000 in liquidated damages. The parties filed cross-motions for summary judgment. The district court denied TBI's motion, but granted Belco's motion for summary judgment. The district court ruled that Belco was not a signatory to the Participation Agreement, and thus was not obligated to drill the exploratory wells. TBI now appeals the district court's grant of summary judgment.

---

[1] TBI invoked diversity jurisdiction under 28 U.S.C. § 1332. The Texas federal district court had jurisdiction because a substantial portion of the transactions and negotiations were consummated in Texas.

DISCUSSION

Standard of Review

We review de novo, a district court's grant of summary judgment, thus applying the same standard applied by the district court in the first instance. See Burge v. Parish of St. Tammany, 157 F.3d 452, 465 (5th Cir. 1999). Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." FED R.CIV.P. 50(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden. Cetolex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its summary judgment burden, the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, this showing requires more than some metaphysical doubt as to the material facts. Matsushito Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 584-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Applicable Law

The Participation Agreement contains a choice of law provision which provides that "This Agreement and the legal relations between the parties shall be govern by and construed [under] . . . Colorado law. . ." Because this case comes to us under diversity jurisdiction, we must honor the choice of law rules under Texas law. See Exxon Corp. v Burglin, 4 F.3d 1294, 1298 (5th Cir. 1993). Under Texas law, courts shall honor a parties' contractual choice of law provision if the provision

3

reasonably relates to the parties' transaction and if the chosen law does not contravene a fundamental policy of the state of Texas. See TEX. BUS. & COM. CODE ANN & 1.105; see also Tel-Phonic Serv. Inc v. TBS Int'l, Inc., 975 F.3d 1134, 1142 (5th Cir. 1992). As such, Colorado law governs our inquiry regarding the rights and duties provided under the Participation Agreement.

TBI's Contractual Claims

TBI claims that Belco expressly assumed the obligations under the Participation Agreement when it entered the assignment agreement with Bannon.

Belco counters that there is no privity of contract between it and TBI. Furthermore, it maintains that there is no agreement in the record that evidences an express intent of the parties for Belco to assume Bannon's duties under the Participation Agreement. The district court ruled that Belco was not obligated to TBI because Belco was not a signatory to the Participation Agreement. The district reasoned that privity did not exist between Belco and TBI.

Under Colorado law a contract is a personal covenant, and thus binds only the parties to the covenant. See Lookout Mountain Paradise Hills Homeowners Ass'n v. Viewpoint Ass'n v. Viewpoint Assocs. 867 P.2d 70, 74 (Colo. Ct. App. 1993). As such, privity of contract must exist between TBI and Belco in order for Belco to be contractually liable for the $850,000 in liquidated damages. See Bonfits v. McDonald, 270 P. 650, 653 (Colo. 1928). In the instant case, the face of the Participation Agreement does not show contractual privity between TBI and Belco because Belco was not a signatory to that agreement. The signatories to the Participation Agreement were Presidio (TBI's predecessor-in-interest) and Bannon.

Nonetheless, TBI asserts that privity exists because Belco expressly assumed Bannon's obligations under the Participation Agreement when Bannon assigned its interests to Belco. Under

4

Colorado law, no particular formality is required to execute a valid assignment. However, "the intent to make an assignment must be apparent." Lookout Mountain, 867 P.2d at 73 (citing Duncan v. Guilet, 62 Colo. 220, 121 P. 299 (1916)). The intent may be reflected by the written instruments executed by the parties or may be inferred from the acts and conduct of the assignor, and it is a question of fact. See id. (citing Metropolitan Life Insurance Co. v. Lanigan, 74 Colo. 386, 22 P. 402 (1924). In the instant case, the parties concede that the assignment agreement between Belco and Bannon is not in the record.

However, TBI points the court to the three Transfer of Operating Rights Agreements ("Transfer Agreements") which it claims contain express provisions that delegate Bannon's obligations under the Participation Agreement to Belco. Specifically, TBI references language in the Rider Supplements to the Transfer Agreements which states: "This Transfer is subject to and Transferee agrees to assume and accept all of the obligations under the following insofar as such pertain to the Wells." TBI also points to clauses in the Rider Supplements that refer to the Participation Agreement. However, the "Wells" described in the Rider Supplements do not include the wells specified in the Participation Agreement. Furthermore, neither the Transfer Agreements nor the Rider Supplements expressly refer to Bannon's obligation to drill exploratory wells under the Participation Agreement. As such, TBI fails to produce any written agreements executed by Bannon and Belco where Belco agreed to assumed Bannon's obligation under the Participation Agreement to drill exploratory wells.

Moreover, TBI does not provide any evidence to show that an assignment could be inferred from the "assignor's (Bannon) acts and conduct." See Lookout Mountain, 867 P.2d at 73. TBI does not point to any correspondence, or affidavits in which Bannon expressly states that it assigned

5

or delegated its obligation under the Participation Agreement to Belco. Furthermore, a June 6, 1995 letter from a TBI manager states that it held Bannon "solely responsible" regarding its drilling obligations under the Participation Agreement. This letter was issued approximately two years after TBI gave its consent for the Bannon/Belco assignment. Although the same representative in an affidavit essentially stated that at all times subsequent to the assignment, Belco was "treated by Bannon and Presidio as a party to the Participation Agreement," nonetheless, this self-serving statement prepared during the course of litigation is insufficient to overcome the force of the contradictory position that was taken in the June 5 letter. Therefore, TBI fails to present sufficient summary judgment evidence to show that Belco assumed Bannon's obligations to drill the exploratory wells.

TBI's Quasi Contract Claim

Next, TBI claims that Belco entered an implied contract when it executed the Belco-Bannon assignment agreement. In other words, by accepting the benefits under the Participation Agreement, Belco impliedly accepted Bannon's obligations as well. Belco, however, claims that an assignment of benefits does not entail a concomitant assumption of duties.

Under Colorado law, TBI's claim is akin to a claim of unjust enrichment. Unjust enrichment is a form of quasi-contract or a contract implied in law. See Dove Valley Bus. Park Assoc., Ltd v. Board of County Comm'rs of Arapahoe County, 945 P.2d 395 (Colo. 1997). Unjust enrichment is an equitable remedy that does not depend on the existence of a contract, oral or written. Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n, 649 P.2d 1091 (Colo. 1982). Nor is privity required. Wistrand v. Leach Realty Co., 147 Colo. 573, 364 P.2d 396, 397 (1961). Thus, unjust enrichment is a judicially fashioned remedy to avoid a benefit to one to the unjust detriment to

6

another.  Cablevision, 649 P.2d at 1097.   A party seeking unjust enrichment must prove: (1) at the plaintiff's expense (2) the defendant receive a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying.  DCB Constr. Co. v. Central City Dev. Co., 965 P.2d 115, 199-20 (Colo. 1998).

Regarding the first two prongs, the record is devo id of financial records to determine the expenses incurred by TBI due to the failure to drill the exploratory wells, nor is there evidence in the record that indicate the monetary value that Belco  received by virtue of its assignment agreement with Bannon.  TBI in its complaint merely claimed that it was entitled to $850,000 in liquidated damages.  However, even assuming that TBI could establish material factual issues regarding the first two prongs, the third prong presents a substantial obstacle.  TBI and Bannon are sophisticated parties who were dealing at arms length.   Certainly, in the oil drilling and exploration field, where assignments are regular occurrences, TBI could have taken more prudent measures by bargaining for sufficient language to protect its interests.    The record does not suggest that TBI was in a substantially weak, or otherwise compromised bargaining position.  Furthermore,  correspondence from TBI representatives suggest that TBI intended to hold Bannon solely liable.  Thus, due to the bargaining strengths and sophistication of the parties involved, the equities do not weigh in TBI's favor.  Therefore, TBI does not show that equitable relief is warranted.

Covenant Running with the Land

TBI argues that the Participation Agreement created a covenant running with the land.  As such, contractual privity is not required.  Under this theory, when Bannon assigned the rights to the Participation Agreement to Belco, the covenant to drill exploratory wells  passed to Belco.

Belco, nevertheless, argues that the Participation Agreement did not create a covenant that runs with the land because the Participation Agreement does not contain express language to create such a covenant.

Colorado law distinguishes personal covenants from real covenants, i.e, covenants running with the land. Personal covenants operate like contract provisions and thus only bind the parties to the contract. Real covenants run with the land and burden or benefit successors-in-interest. See Lookout Mountain 867 P.2d at 73. Thus, privity of contract is not necessary for a real covenant to bind a successor-in-interest. For a covenant to run with the land, there must be an intent by the parties to the covenant that the covenant runs with the land. See id., 867 P.2d at 74; Cloud v. Associations of Owners, Satellite Apartment Building, 857 P.2d 435, 440 (Colo. App. 1992); Brown v. McDavid, 676 P.2d 714 (Colo.App. 1983). Furthermore, the covenant must "touch and concern" the land. See id. 867 P.2d at 74. "That is, it must closely relate to the land, its use, or its enjoyment." Id. (citations omitted).

The parties do not dispute that the covenant to drill exploratory wells in the Participation Agreement "touches or concern the land." The issue is whether the Participation Agreement manifests the parties' intent that the covenant to drill exploratory wells runs with the land, and thus is binding on all successors-in-interest. TBI points to the following language in the Participation Agreement to argue that the parties intended for the covenant to run with the land: "This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns." The district court stated that Colorado courts require more specificity in the language that purports to create a covenant running with the land.

8

Our survey of Colorado case law has not revealed any precedent that states that a covenant running with the land must be expressed in specific or magical terms. However, in the cases that have recognized a covenant running with the land, the covenants were in express terms. See Lookout 867 P.2d at 75 ("covenants herein set forth shall run with the land and bind the present owner, its successors and assigns..."); Cloud, 857 P.2d at 440 ("the following . .. covenants . . . shall be deemed to run with the land, shall be a benefit and burden to Declarant, its successors and assigns and any person acquiring or owning a interest in the real property and improvements, their grantees, successors, heirs, . . .); Brown, 676 P.3d at 716 ("These Covenants shall run with said property, and shall be binding upon and inure to the benefit of the Developer, each subsequent owner of said real property, or any part thereof, and each successor in interest of each such subsequent owner.")(emphasis added). Comparing the broad and vague language in the Participation Agreement to the express language in the cases cited above reveals that the Participation Agreement falls short of expressing an intent for the covenant to drill exploratory wells to run with the land. Additionally, a requirement that real covenants be expressed in specific and unambiguous terms carries force because nonparties and successors-in-interest who did not participate in the negotiations to the principal agreement should be able to determine their respective rights and obligations from the face of the principal agreement. Thus, the district court did not err when it ruled that the Participation Agreement did not create a covenant that runs with the land.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment to Belco.

AFFIRMED.

9