EDWARD S. NILES *v.* ADORA N. CARLTON'S ESTATE.

Special Term at Brattleboro, November, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 7, 1910.

*Tenancy in Common of Real Estate—Mutual Rights of Tenants —Their Contracts Between Themselves Regarding the Joint Property—Force and Effect.*

Tenants in common of real estate may make such special contracts between themselves regarding the joint property as they please, which will ·bind them to the same extent and be enforceable in the same manner as similar contracts between strangers; nor is an express promise indispensable in such cases, but the circumstances may give rise to a binding implied promise.

Where it was agreed· between tenants in common of real estate that one of them should "in his own way" make repairs and improvements to the joint property, they both to share the expense, nothing further being said about the extent of the repairs and improvements, and the other tenant knew that they were being made, and occasionally visited the premises and consulted with the co-tenant who was making the repairs and improvements, and never revoked the authority given him, she was liable, on a promise implied from the circumstances, ror her agreed share, which in her lifetime was enforceable by an action of assumpsit, and after her decease could be recovered from her estate.

APPEAL from the decision of commissioners allowing the claim of Edward S. Niles presented against the estate of Adora N. Carlton; Will Carlton, appellant. Declaration, general assumpsit. Plea, the general issue. Trial by court at the April Term, 1909, Windham County, *Butler,* J., presiding. Judgment for the claimant. The appellant excepted. The appellant moved to dismiss the case for that "by law the probate court and the commissioners on said estate were without authority and jurisdiction to consider, pass upon and allow said claim, and

to act in the premises, as shown by the record.'' Motion denied, to which appellant excepted. The opinion states the case.

*Herbert G. Barber, Frank E. Barker* and *Arthur P. Carpenter* for the appellant.

The motion to dismiss should have been granted. The probate court, and the county court on appeal, were without jurisdiction. The parties were tenants in common, and the case is governed by the law announced in 1 Chit. Pl. (9 Am. Ed.) 39:—"At law, one partner, or tenant in common, cannot in general sue his co-partner or co-tenant in any action in form *ex contractu;* but must proceed by action of account, or by bill in equity. This rule is founded on the nature of the situation of the parties; the difficulty at law of adjusting complicated accounts between them, and the propriety, arising from the supposed confidence reposed by the parties in each other, of their being examined upon oath, which can only be effected in a court of equity.'' *Lyon* v. *McLaughlin,* 32 Vt. 426; *Stevens* v. *Coburn,* 71 Vt. 261; *Park* v. *McGowan,* 64 Vt. 173; *Sparhawk et al.* v. *Buell et al.,* 9 Vt. 73; *Herrick* v. *Belknap Est.,* 27 Vt. 698; *Brown* v. *Sumner Est.,* 31 Vt. 673.

It appearing that the parties have not settled and adjusted all their rights respecting the common property, claimant cannot recover in an action of general assumpsit. *Hunt* v. *Rublee,* 76 Vt. 448; *LaPoint* v. *Scott,* 36 Vt. 603; *Albee* v. *Fairbanks,* 10 Vt. 314.

*Chase & Daley* for the claimant.

Powers, J. For several years prior to her death in 1904, Adora N. Carlton and her brother, Edward S. Niles, had owned a farm in the town of Halifax as tenants in common. Another brother, James P. Niles, had formerly owned a third interest in the place, but conveyed it to Edward S. in 1898. During the lifetime of Adora N., the claimant, at his own expense, made extensive repairs and improvements on the property and paid out various sums for insurance and other purposes. He now seeks to collect one-third of such expenditures from Adora N.'s estate. He declares in assumpsit and had judgment below on facts found by the court.

We have no occasion to inquire what the situation would have been had the claimant gone voluntarily on and made the expenditures referred to without the authority or approval of Mrs. Carlton, for that is not the case made by the findings. On the contrary, the trial court has made it perfectly clear that the expenditures were made with a distinct understanding between the parties that Mrs. Carlton was to pay one-third thereof. The farm was purchased with the understanding that it was to be fitted up for a summer home. It was agreed between the claimant, his brother and Mrs. Carlton that they should share equally in the purchase price, and that the claimant should proceed in his own way to make the repairs and improvements, and fit the place up for the purpose for which it was purchased. Nothing was said about the amount or extent of the repairs and improvements, but Mrs. Carlton admonished the claimant to get the work done as cheaply as possible. She knew that the improvements were being made, and occasionally visited the premises and consulted with the claimant regarding them. They never agreed upon the nature and extent of the changes that were to be made nor did she have knowledge thereof before they were completed. But she did have "such knowledge as she acquired by occasional visits to the farm and consultations with the claimant," and she appeared to acquiesce in what was being done. She must have been pretty well informed as to what was going on there, for the character of the work was such that but little could have escaped her attention. She made several payments to the claimant on the account, and there is nothing in the findings to indicate that she ever revoked the authority originally conferred on the claimant when she gave him a free hand to go on "in his own way" as above stated. The findings state that the "expenditures for necessary repairs and improvements upon the property, insurance, legal services and personal property were made with the knowledge of Mrs. Carlton, and with the expectation on the part of both the claimant and Mrs. Carlton that she was to pay one-third." A spring of water was purchased and an aqueduct laid for the benefit of the common property, "with full knowledge on the part of Mrs. Carlton, and with the expectation on her part to pay one-third of the expense."

These parties, though tenants in common, were at liberty to make such special contracts regarding their joint property as they pleased. And such contracts, when made, would bind them to the same extent and be enforceable in the same manner as similar contracts between strangers. *Strother's Admr.* v. *Butler,* 17 Ala. 733; *Fowler* v. *Fowler,* 50 Conn. 256; *Gwinneth* v. *Thompson,* 9 Pick. 31, 19 Am. Dec. 350. Nor is an express promise indispensable in such cases; the circumstances may be such as to give rise to an implied promise, which is equally effective in fixing their rights and liabilities. Note to *Ward* v. *Ward,* 52 Am. St. Rep. at p. 936; 11 Am. & Eng. Ency. L. 1095-6; *Haven* v. *Mehlgarten,* 19 Ill. 91; see *Jourdan* v. *Soule,* (Me.) 12 Atl. 786.

Mrs. Carlton became liable for her share of the expenditures, not by virtue of her relation to the property, but by virtue of her agreement to pay,—an agreement arising out of the circumstances in which the expenditures were made. That the claimant had not accounted for his use and occupancy of the property, in excess of his fair share of the same, or the use of the water at his private place is immaterial. Mrs. Carlton's liability for one-third of the expenditures in question was independent and in her lifetime was enforceable by an action of assumpsit. 11 Am. & Eng. Ency. L. 1129.

*Judgment affirmed and ordered to be certified to the probate court.*