2016 COA 82

Allan D. REISHUS, Craig T. Eckroth, and Ronald J. Danner, individually and as managers for Adams Ranch, Plaintiffs–Appellees,

v.

BULLMASTERS, LLC; Enrique M. Garcia, Jr., Gerardo Garcia, Gabriel A. Saenz, Adan Saenz, and Bobby W. Woodall, individually and as members of Bullmasters, LLC; Bugle Basin Ranches, LLC; Kent Gordon, individually and as a member of Bugle Basin Ranches, LLC; and Brent Biggs, individually, Defendants–Appellants.

Court of Appeals No. 15CA0959

Colorado Court of Appeals, Div. IV.

Announced May 19, 2016

Gast Johnson & Muffly, PC, Peter J. Dauster, Benjamin D. Kramer, Fort Collins, Colorado, for Plaintiffs–Appellees

Porterfield & Associates, LLC, Wendell B. Porterfield, Jr., Vail, Colorado, for Defendants–Appellants

Opinion by JUDGE LICHTENSTEIN

¶ 1 This case involves the intersection between the common law rights held by tenants in common to possess, use, and enjoy their property, and contract provisions that purport to forego some of those property rights.

¶ 2 In this declaratory judgment action, defendants appeal the district court's judgment that an amendment to an ownership agreement was valid and binding on all tenants in common who hold ownership interests in a ranch. The amendment was adopted by the vote of fewer than all the tenants in common and placed restrictions on all the co-owners' access to their ranch during hunting season. Because we conclude that this amendment was validly adopted under the ownership agreement and binds all the parties to the agreement and their successors in interest, we affirm.

## I. Background

### A. The Property and Parties to This Action

¶ 3 Adams Ranch is a 560–acre property in Rio Blanco County, Colorado, and its owners hold the property as tenants in common.

¶ 4 Not all of the co-owners of the ranch are involved in this declaratory judgment action. Plaintiffs are Allan D. Reishus, Craig T. Eckroth, and Ronald J. Danner, who are the appointed managers of the ranch. Each has an undivided 1/12th interest in the ranch. They brought this declaratory judgment action after defendants objected to the hunting restriction amendment.

¶ 5 Defendants are two limited liability companies and seven individuals who own undivided interests in the ranch either individually or as members of the LLCs.[1] Com-

---

1. Specifically, defendants are Bullmasters, LLC; Enrique M. Garcia, Jr., Gerardo Garcia, Gabriel A. Saenz, Adan Saenz, and Bobby W. Woodall, individually and as members of Bullmasters, LLC; Bugle Basin Ranches, LLC; Kent Gordon, individually and as a member of Bugle Basin

bined, they own 4/12ths of the ownership interests in the ranch.

¶ 6 The remaining co-owners, while not parties to this action, agreed to be bound by the court's decision.

### B. The Stipulated Facts

¶ 7 The parties filed a stipulated and agreed statement of facts with attached exhibits, including an original 1988 ownership agreement, a 2007 amended and restated ownership agreement, and two amendments that were adopted in 2011. According to their stipulations and exhibits, the facts are as follows.

¶ 8 In 1983, the owner of Adams Ranch conveyed it to eleven individuals as tenants in common. Of those eleven co-owners, only plaintiffs Reishus and Danner still have ownership interests in the ranch.

¶ 9 The original ownership agreement, signed by the then-owners, was recorded in 1988. Its stated purpose was to allow each of the co-owners to build mountain homes on 35–acre parcels on the property. Among its provisions, it stated that it could be "amended or deleted by a simple majority of the individual owners at any time."

¶ 10 In 2007, more than a majority of the then co-owners signed an "Amended and Restated Adams Ranch Ownership Agreement" (2007 Amended Agreement).

¶ 11 The 2007 Amended Agreement provides that it "supersedes and replaces" the original ownership agreement. It expressly states that its provisions run with the land and are binding on all owners, their legal representatives, heirs, successors, and assigns. And it can be amended (by modifying or deleting existing provisions, or by adding new provisions) "at any time by a written and recorded instrument signed by the then-record Owners of at least 7/12ths of the Ownership Interests."

¶ 12 It states that the purpose of the ranch is to be an agricultural property that also provides a "quality hunting experience." Among its several provisions, it required that all guests to the ranch be accompanied by a co-owner, unless 7/12ths of the ownership interests approved an exception. It also required that the number of guests be limited to a "reasonable number" so as not to interfere with the use of the ranch by the other owners.

¶ 13 In 2011, an ownership meeting was held to discuss (as pertinent here) "limiting hunting days per fraction of ownership." Defendants sent an e-mail prior to the meeting stating they were not attending the meeting and were protesting this proposed limit on hunting days.

¶ 14 After this meeting, two amendments to the 2007 Amended Agreement were adopted and recorded. The first of the two amendments was recorded in September 2011.

¶ 15 The second of the two amendments was recorded in October 2011 and is the subject of this dispute. This amendment provides:

> In order to maximize the hunting opportunities and quality of hunting for all Owners, Owner access to the Ranch during the prime hunting seasons extending from the first day of archery season through the last day of the first rifle season ("Prime Seasons") shall be limited as follows, commencing with the 2012 Prime Seasons and continuing annually thereafter:
>
> - Thirty access days during the Prime Seasons for each 1/12th Ownership Interest; and
> - Fifteen access days during the Prime Seasons for each of the Eberhardt and Puckett Interests (each such Interest being a 1/24th Ownership Interest).

For purposes of this Section, an "access day" means a day during which an Owner or an Owner's guest has access to the Ranch. By way of clarification, if an Owner of a 1/12th Ownership Interest is using the Ranch along with a guest of such Owner during one of the Prime Seasons, such use by the Owner and the guest will count as two access days....

Ranches, LLC; and Brent Biggs, as an individual.

¶ 16 This hunting restriction was approved by 7/12ths of the ownership interests, as required by the 2007 Amended Agreement. It was not signed by the defendants in this case.

### C. Declaratory Judgment

¶ 17 Defendants disputed the validity of the hunting restriction, asserting that it improperly restricts the possessory and use rights of the co-owners (as tenants in common), and thus it cannot restrict a co-owner without that co-owner's consent. Plaintiffs filed a declaratory judgment action, asking the court to find that the hunting restriction is valid and binding on all the Adams Ranch owners, including defendants.

¶ 18 The court, in a thorough and well-reasoned order, reviewed the various ownership agreements and found that the 2011 hunting restriction amendment was valid and binding. It concluded that the 1988 ownership agreement and the 2007 Amended Agreement are real covenants (as opposed to personal covenants) that run with the land; thus, their provisions are binding on not only the *then* co-owners of the ranch, but also on those co-owners' successors in interest. It further found that the 2007 Amended Agreement replaced and superseded the original agreement and changed the intended purpose of the property to provide a "quality hunting experience." Then it concluded that the 2011 hunting restriction was "duly adopted and is permissible here" because it was adopted in compliance with the amendment provisions of the 2007 Amended Agreement and it promoted the agreement's intended purpose, which is to provide a "quality hunting experience."

¶ 19 Defendants raise two contentions on appeal. First, they contend that the hunting restriction is invalid because, under the common law, one group of tenants in common cannot contractually limit the possessory rights of other co-owners without their unanimous consent. Second, they challenge the district court's conclusion that the amendment provisions in the original ownership agreement and the 2007 Amended Agreement are real covenants that are binding on defendants and their successors in interest.

### II. Standard of Review

¶ 20 The interpretation of written agreements and the application of governing legal principles are questions of law that we review de novo. *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 132 (Colo.App. 2009).

¶ 21 Where, as here, the court's decision is based on stipulated facts and exhibits, "we are obligated to make an independent judgment on the merits." *Hinojos v. Lohmann*, 182 P.3d 692, 694–95 (Colo.App.2008) (quoting *Bolser v. Bd. of Comm'rs*, 100 P.3d 51, 53 (Colo.App.2004)).

### III. Whether the Hunting Restriction Is Valid

¶ 22 Defendants assert that the hunting restriction cannot be enforced because it encroaches on a fundamental feature of a tenancy in common: one group of co-owners cannot limit the possessory rights of other co-owners without their unanimous consent. They therefore claim that the hunting restriction, which limits all the co-owners' access to the ranch during hunting season, is invalid because it was executed by only 7/12ths of the ownership interests. Because we conclude that the co-owners of the ranch validly contracted to allow restrictions on their possessory rights and to allow such restrictions without unanimous consent, we are not persuaded.

### A. Relevant Law

¶ 23 This case requires us to review the common law rights held by tenants in common to possess, use, and enjoy their property, as well as contract provisions that purport to forego some of these rights. We first turn to the common law principles governing tenancies in common.

¶ 24 A tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property. *Taylor v. Canterbury*, 92 P.3d 961, 964 (Colo.2004). One of the essential rights of a tenancy in common is that all cotenants have the right to possess the entire property. *Id.*;

20 Am.Jur.2d *Cotenancy and Joint Ownership* § 32, Westlaw (database updated February 2016) ("[T]enancy in common is characterized by a single essential unity—that of possession, or of the right to possession, of the common property. . . .") (footnotes omitted). Each tenant in common is entitled to equal use and possession of the property; no cotenant has the right to exclusive use, and his individual right of use is limited by the requirement that it does not operate to exclude other cotenants from enjoying their equal privileges. *Davis v. Shawler*, 214 Kan. 501, 520 P.2d 1270, 1276 (1974); *see also* 20 Am.Jur.2d *Cotenancy and Joint Ownership* §§ 40, 41, Westlaw (database updated February 2016).

¶ 25 But, while tenants in common generally have the common law right to possess, use, and enjoy the entire property, they can contract otherwise. *See Keith v. El-Kareh*, 729 P.2d 377, 378, 380 (Colo.App.1986) (involving contract between tenants in common giving one co-owner exclusive possession of the property and responsibility for upkeep and repairs). Indeed, the "general rules [of tenancies-in-common] will not control where there is a contrary agreement." *Butler ex rel. Butler v. Rafferty*, 100 N.Y.2d 265, 762 N.Y.S.2d 567, 792 N.E.2d 1055, 1058 (2003) (alteration in original) (quoting 13 *Warren's Weed, New York Real Property, Tenancy in Common* § 3.01[1]); *see also Keith*, 729 P.2d at 380; *Cleveland Tr. Co. v. Hart*, 100 Ohio App. 66, 131 N.E.2d 841, 842 (1955) ("During the existence of the lease their rights as tenants in common were suspended, and the unity and right of possession had become severed, and, for the time being, abrogated, by their signing of the contract."); *Niles v. Carlson's Estate*, 83 Vt. 261, 75 A. 266, 267 (1910) ("These parties, though tenants in common, were at liberty to make such special contracts regarding their joint property as they pleased. And such contracts, when made, would bind them to the same extent and be enforceable in the same manner as similar contracts between strangers.").

### B. Discussion

¶ 26 With these principles in mind, we now turn to the contract provisions in the 2007 Amended Agreement.

¶ 27 The 2007 Amended Agreement is a comprehensive regulation of the owners' use and possession of the ranch, meant to further the owners' intent for the ranch to "provide a quality hunting experience." For example, it provides that "[n]o live trees will be cut on the Ranch except as necessary to clear a site for a Dwelling"; that "[a]ll motor vehicles . . . must remain on designated Ranch roads"; and that "no guests of an Owner may visit the Ranch unless accompanied by an Owner" unless otherwise approved by 7/12ths of the ownership interests. It also provides that any residential dwelling "must be located within the general vicinity of the two old homestead cabins" and other existing dwellings, and they must be "built in the same general manner as the other existing dwellings."

¶ 28 Thus, by its express terms, the 2007 Amended Agreement limits or eliminates the possessory rights that tenants in common are ordinarily entitled to under the common law. *See, e.g., Keith*, 729 P.2d at 380 (tenants in common contracted to give one co-owner exclusive possession); *Cleveland Tr. Co.*, 131 N.E.2d at 842.

¶ 29 Defendants do not challenge the notion that tenants in common may restrict their rights to possess and use the entire ranch by contractual agreement. *See Keith*, 729 P.2d at 380. But they argue that because unity of possession is such an essential feature of tenancies in common, one group of co-owners may not take away the possessory rights of another group of co-owners *without their unanimous consent*. We disagree that unanimous consent was required in this case because the co-owners were at liberty to (and did) contract away any entitlement to unanimous consent with regard to their possessory rights.

¶ 30 Not only can tenants in common contract to limit their right of possession, they can also adopt additional restrictions on their common law rights without the unanimous consent of all the co-owners if their contract allows for such non-unanimous amendment. *See Pew v. Sayler*, 123 A.3d 522, 526, 532–33 (Me.2015) (enforcing a con-

tract provision by tenants in common of "Mouse Island" that required a two-thirds vote to amend the ownership agreement as to "any significant changes affecting the Island").

¶ 31 And contractual provisions allowing non-unanimous votes may involve essential features of cotenancy, including the unity of possession. For example, in *Felska v. Goulding*, 238 Mont. 224, 776 P.2d 530 (1989), a co-owner argued that because he and the other co-owners of a property maintained their interests as tenants in common, a majority vote of the co-owners to sell *all* the interests in the property was ineffective to divest him of his interest in the property. The Montana Supreme Court rejected this argument, holding that the co-owner was bound by a provision in the ownership agreement that permitted the sale of the entire property by a simple majority vote. *Id.* at 531–35.

¶ 32 Here, the 2007 Amended Agreement provides that it "may be amended (by (a) either modifying or deleting existing provisions or (b) by adding new provisions) or terminated at any time by a written and recorded instrument signed by the then-record Owners of at least 7/12ths of the Ownership Interests." The agreement did not contain a requirement for unanimous consent to amend any of its provisions. *Cf. id.* at 533 (enforcing an ownership agreement that contained the provision that "[a]ll decisions shall be by majority vote unless otherwise specified in this Agreement").

¶ 33 By its terms, the 2007 Amended Agreement permitted a non-unanimous amendment of its provisions, including those which already limited the co-owners' common law possessory rights. We are therefore persuaded that the parties to the 2007 Amended Agreement agreed to allow 7/12ths of the ownership interests to amend the agreement to limit the common law possessory rights of all the co-owners.

¶ 34 Because co-owners in tenancies in common may contract to limit their common law rights by less than unanimous consent, and the co-owners did so here, we conclude that the amendment provision in the 2007 Amended Agreement is valid. And because

the hunting restriction was adopted in compliance with that provision, we conclude that it is also valid.

## IV. Whether the 2007 Amended Agreement Is a Real Covenant

¶ 35 Next, we must determine whether the 2007 Amended Agreement is a real covenant that is binding on the parties and their successors in interest.

### A. Relevant Law

¶ 36 Covenants among landowners may be real or personal. *See Cloud v. Ass'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 440 (Colo.App.1992). Personal covenants operate like ordinary contract provisions and are binding only on the actual parties to the covenant. *Id.* Real covenants, on the other hand, "run with the land" and are binding on the parties' successors in interest, as well as the parties themselves. *Id.*

¶ 37 To create a real covenant, the parties must intend for the covenant to run with the land and bind their successors in interest, and the covenant must "touch and concern" the land. *Id.* A covenant touches and concerns the land if it "closely relate[s] to the land, its use, or its enjoyment." *Id.* (citing *Bigelow v. Nottingham*, 833 P.2d 764 (Colo.App.1991)).

¶ 38 To determine whether a covenant is real or personal, we must read it as a whole. *Id.*; *see also Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 75 (Colo.App.1993) ("Restrictive covenants must be construed as a whole and interpreted in view of their underlying purposes, giving effect to all provisions contained therein.").

### B. Discussion

¶ 39 Defendants argue that, contrary to the district court's conclusions, neither the original 1988 ownership agreement nor the 2007 Amended Agreement are real covenants that are binding on their parties' successors in interest. We disagree.

¶40 The original 1988 agreement stated that it "may be amended or deleted by simple majority of the individual owners at any time." The 2007 Amended Agreement was signed and acknowledged by more than a simple majority of the co-owners with the intent to amend and restate the original agreement. (And, at oral argument, the parties confirmed that all the owners are bound by the 2007 Amended Agreement.)

¶41 Because the 2007 Amended Agreement was executed in compliance with the terms of the original agreement, supersedes that agreement, and binds all the parties in this appeal, we need not decide whether the original agreement was a real covenant.

¶42 Turning to the 2007 Amended Agreement, we conclude that it is a real covenant.

¶43 First, it explicitly states that "[t]he provisions of this Agreement shall run with the Ranch, shall be binding upon and inure to the benefit of all Owners, their legal representatives, heirs, successors and assigns, and shall be in effect in perpetuity unless amended or terminated as provided in this Agreement." Accordingly, the parties clearly intended the 2007 Amended Agreement to run with the land. *See Cloud*, 857 P.2d at 440 (express language in covenant demonstrated intent to run with the land); *Lookout Mountain*, 867 P.2d at 75 (same).

¶44 Second, the 2007 Amended Agreement touches and concerns the land when read as a whole. Its stated intent is "to have an agricultural property that would also provide a quality hunting experience." It includes detailed provisions for the location, structure type, and maintenance of residential dwellings that the co-owners can build on the ranch. And it contains use restrictions involving tree-cutting, motor vehicles, and guest visitation. These provisions are closely tied with the use, possession, and enjoyment of the ranch. *See Lookout Mountain*, 867 P.2d at 74-75. In light of these provisions, we are convinced that the 2007 Amended Agreement touches and concerns the land and constitutes a real covenant.

¶45 Defendants argue that while the provisions mentioned above may touch and concern the land, the provision allowing 7/12ths of the ownership interests to amend the agreement does not. But, we do not read individual provisions in isolation when deciding whether a covenant is real or personal; instead, we look at the covenant as a whole. *See Cloud*, 857 P.2d at 440-41 (concluding that, while challenged provision standing alone did not touch and concern the land, the covenant as a whole did run with the land, and the court would not "cut and paste the covenant"). In our view, the 2007 Amended Agreement as a whole touches and concerns the land and constitutes a real covenant.

¶46 Accordingly, we conclude that the 2007 Amended Agreement and its subsequent amendments are valid and binding on the parties to the 2007 Amended Agreement and their successors in interest.

V. Conclusion

¶47 The district court's judgment is affirmed.

JUDGE HAWTHORNE and JUDGE ROMÁN concur.